Kenneth McDONALD *v.*
BATESVILLE POULTRY EQUIPMENT
and Freemont Compensation Insurance

CA 04-872            206 S.W.3d 908

Court of Appeals of Arkansas
Opinion delivered April 13, 2005

[Rehearing denied May 18, 2005.]

*Ronald L. Griggs*, for appellant.

*Roberts Law Firm, P.A.*, by: *Jeremy Swearingen* and *Christy King*, for appellee Batesville Poultry Equipment.

SAM BIRD, Judge. This workers' compensation case presents statutory and factual issues regarding a claimant's entitlement to permanent total disability benefits after he has sustained a scheduled compensable injury. Appellant Kenneth McDonald suffered a compensable scheduled injury to his right leg on May 5, 1999, when he fell through a broken board in the floor of a chicken house while he was running wires for the installation of a ventilation fan. The injury required several surgeries and resulted in a fifty-percent impairment rating to his left lower extremity. Although appellee Batesville Poultry Equipment accepted the impairment rating and

related expenses, it controverted McDonald's claim that his injury rendered him permanently and totally disabled from engaging in gainful employment. Appellee asserted at a hearing before the administrative law judge that, because the injury was a scheduled one, McDonald was statutorily precluded from establishing a claim for permanent total disability.

In an opinion of September 22, 2003, the law judge found that the claim was lodged under Ark. Code Ann. § 11-9-519(c); after considering McDonald's age, education, work history, and permanent restriction limitations, the law judge found that McDonald was entitled to permanent total disability benefits. The Workers' Compensation Commission reversed the award in an order of June 17, 2004, finding that Ark. Code Ann. §§ 11-9-521(g) and -519(b) statutorily barred McDonald from recovering permanent total disability benefits because he had a scheduled injury. The Commission further found that, even if our statutes allowed McDonald to recover permanent and total disability benefits, he was not entitled to permanent and total disability benefits under the facts of the case.

McDonald now appeals the denial of his claim, raising two points: he contends that the Commission improperly interpreted Ark. Code Ann. §§ 11-9-521 and -519, and he contends that he is permanently and totally disabled. Appellee has filed a brief asserting that the Commission's decision is correct. Additionally, appellee has filed a motion to strike a nonconforming portion of McDonald's statement of the case. We grant the motion because we agree with appellee's assertion that, in contravention of Ark. R. Sup. Ct. 4-2(a)(6) (2004), McDonald has included argument in his statement of the case. Deletion of this portion of the statement of the case, however, does not affect our disposition of the appeal.

We agree with both of McDonald's points on appeal. The case is remanded to the Commission for application of the proper statute in determining whether McDonald is entitled to claim benefits for permanent and total disability.

## 1. *Statutory Provisions*

Regarding the issue of whether McDonald's claim for permanent total disability was statutorily allowed, the Commission wrote:

> Prior to Act 796 of 1993, the Workers' Compensation Act did not have a statutory provision allowing for permanent and total

disability benefits for a scheduled injury. The award for a scheduled injury has always been limited to the schedule unless the claimant established by a preponderance of the evidence that [a] scheduled injury rendered him permanently and totally disabled under Ark. Code Ann. § 11-9-519. *Moser v. Arkansas Lime Co.*, 40 Ark. App. 108, 842 S.W.2d 456 (1992), Supp. Op., 40 Ark. App. 114, 846 S.W.2d 188 (1993). Act 796 now provides a specific section addressing a claimant's entitlement to benefits in excess of the schedule. Ark. Code Ann. § 11-9-521(g). Accordingly, strictly construing the Act as the Commission is mandated to do, we find that we are guided and limited by the Act in awarding any benefits for a scheduled injury over and above the amount set forth in the schedule.

Ark. Code Ann. § 11-9-521(g) specifically states that a claimant is not entitled to benefits over and above the schedule except as provided in Ark. Code Ann. § 11-9-519(b). This provision only provides for permanent and total disability benefits in limited circumstances. A claimant must have lost "both hands, both arms, both legs, [both] eyes, or any two (2) thereof" in order to be deemed permanently and totally disabled. The Act does not provide for any circumstances in which a claimant with a [scheduled] injury may be permanently and totally disabled. While we recognize that there may be circumstances in which a claimant with only one scheduled injury who does not satisfy the multiple losses set forth in Ark. Code Ann. § 11-9-519(b) may be permanently and totally disabled, the Act does not allow for an award of benefits greater than the schedule. Ark. Code Ann. § 11-9-1001 prohibits this Commission from adding coverage or expanding the scope of the statute; accordingly, we find that we cannot look to other factors beyond the loss of the extremities listed in § 519(b) in determining whether a claimant with a scheduled injury is permanently and totally disabled.

When we analyze this claim under the provisions of Ark. Code Ann. § 11-9-519(b), we cannot find that the claimant has proven that he is permanently and totally disabled. First, the claimant did not lose a combination of any of the two extremities listed. In fact, the claimant has not lost any extremity whatsoever. The claimant has a 50% permanent impairment to his left leg. Further, the claimant did not [lose] both of his eyes, nor did he [lose] any combination of the hands, arms, legs, or eyes that would constitute permanent total disability under § 11-9-519(b). In short, a wage-loss determination on a scheduled injury is contradictory to the statutory interpretation.

As his first point on appeal, McDonald contends that the Commission improperly interpreted Ark. Code Ann. §§ 11-9-521 and -519. The relevant portions of Ark. Code Ann. § 11-9-521 (Repl. 2002) state:

> (a) An employee who sustains a permanent compensable injury scheduled in this section shall receive, in addition to compensation for temporary total and temporary partial benefits . . . weekly benefits in the amount of the permanent partial disability rate attributable to the injury, for that period of time set out in the following schedule:
>
> . . . .
>
> (g) Any employee suffering a scheduled injury shall not be entitled to permanent partial disability benefits in excess of the percentage of physical impairment set forth above except as otherwise provided in § 11-9-519(b).

Also relevant to this first point on appeal is Ark. Code Ann. § 11-9-519 (Repl. 2002), which provides in pertinent part as follows:

> (b) In the absence of clear and convincing proof to the contrary, the loss of both hands, both arms, both legs, both eyes, or of any two (2) thereof shall constitute permanent total disability.
>
> (c) In all other cases, permanent total disability shall be determined in accordance with the facts.
>
> . . . .
>
> (e)(1) "Permanent total disability" means inability, because of compensable injury or occupational disease, to earn any meaningful wages in the same or other employment.
>
> (2) The burden of proof shall be on the employee to prove inability to earn any meaningful wage in the same or other employment.
>
> (f) In considering a claim for permanent disability, the commission and the courts shall not consider the odd-lot doctrine.

McDonald first asserts that the Commission ignored the actual language of Ark. Code Ann. §§ 11-9-521(g) and -519(b) and the clear intent that they express when read together. He

argues that although Ark. Code Ann. § 11-9-521(g) prohibits him from seeking permanent *partial* disability benefits in excess of the percentage of permanent physical impairment, it does not preclude his claiming permanent *total* disability benefits in excess of his anatomical impairment. He asserts that section 11-9-519(b)'s presumption regarding the loss of both hands, both arms, both legs, both eyes, or any two thereof has no application to his claim.

Appellee counters that, while a reading of section 11-9-519(b) alone might give rise to the result favored by McDonald, the statute must be read in context with section 11-9-521(g). It argues that the intent of the legislature is also revealed "through the fact that § 11-9-521(g) specifically indicates the condition(s) which must be met for a scheduled injury claimant to be found permanently and totally disabled," the condition being that the scheduled-injury claimant meet the requirements of Ark. Code Ann. § 11-9-519(b). It asserts that these subsections address the same specific subject, claims for permanent total disability benefits by scheduled-injury claimants.

Arkansas Code Annotated section 11-9-704(c)(3) (Repl. 1996) requires that we construe workers' compensation statutes strictly. Under the doctrine of strict construction, nothing is taken as intended that is not clearly expressed, and the plain meaning of the language is employed. *Edens v. Superior Marble & Glass*, 346 Ark. 487, 58 S.W.3d 369 (2001); *Wheeler Constr. Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001).

■ Here, the Commission ignored the clear language of Ark. Code Ann. § 11-9-521(g) that a scheduled-injury claimant "shall not be entitled to *permanent partial disability benefits* in excess of the percentage of physical impairment set forth above except as otherwise provided in § 11-9-519(b)" (emphasis ours). In finding that a scheduled-injury claimant is prohibited from entitlement to *permanent total disability benefits* in excess of the percentage of his physical impairment and that such a claim must meet the multiple-loss requirements, the Commission impermissibly expanded the statutory prohibition of a claim for permanent partial disability benefits except in a case of multiple losses. Thus, we hold that the Commission erred in finding that Ark. Code Ann. § 11-9-521(g) prohibits "benefits in excess of the schedule," and it erred in determining that McDonald, after sustaining a scheduled com-

pensable injury, was statutorily prohibited from bringing his claim for permanent total disability under subsections 11-9-521(g) and 11-9-519(b).

Our reversal of the Commission's finding that Ark. Code Ann. § 11-9-521(g) prohibited McDonald's claim does not entirely resolve the first point on appeal. McDonald contends that his claim for permanent total disability is allowed by Ark. Code Ann. § 11-9-519(c) as one of "all other cases" to be determined "in accordance with the facts of the case." McDonald cites the holding in *Moser v. Arkansas Lime Co.*, 40 Ark. App. 113, 846 S.W.2d 188 (1993), that in scheduled injury cases where the nature of the injury has been fixed, a finding of permanent and total disability necessarily hinges on factors such as the claimant's age, education, experience, and other matters affecting wage loss. He also relies on cases that allowed payment of permanent total disability under workers' compensation statutes that predate Act 796 of 1993.

Appellee counters that subsection 11-9-519(c) applies only to claimants who have whole-body unscheduled injuries, and that the language "all other cases" must necessarily be construed to mean unscheduled injuries. They assert that to hold otherwise would be tantamount to applying the odd-lot doctrine, which is now expressly prohibited by Ark. Code Ann. § 11-9-519(f) in claims for permanent disability.

In *McNeely v. Clem Mill & Gin*, 241 Ark. 498, 409 S.W.2d 502 (1966), the first in a line of cases under predecessor statutes to Ark. Code Ann. §§ 11-9-519(b) and (c), an award of total disability was affirmed after a claimant suffered a scheduled injury to his right leg. The *McNeely* court wrote:

> In our opinion the commission gave effect to the legislative intent. The statute defines disability as the incapacity to earn, in the same or any other employment, the wages which the employee was receiving at the time of his injury. Section 81-1302(e). With respect to total disability the act provides: 'Loss of both hands, or both arms, or both legs, or both eyes, or of any two (2) thereof shall, in the absence of clear and convincing proof to the contrary, constitute permanent total disability. *In all other cases,* permanent total disability shall be determined in accordance with the facts.' (Our italics.) Section 81-1313(a). If the statute means what it says, the present case is one in which the question of permanent total disability is to be determined as an issue of fact.

*Id.* at 499, 409 S.W.2d at 503.

In the present case, although the Commission noted that our workers' compensation statutes changed with the enactment of Act 796 of 1993, we do not think that the Commission has correctly determined how these statutory provisions affect a scheduled-injury claimant's entitlement to permanent and total disability benefits. Because the Commission did not fully address the parties' arguments regarding statutory provisions other than Ark. Code Ann. §§ 11-9-521(g) and -519(b), we remand the first point on appeal. The Commission is to determine the statutory subsections that apply to McDonald's claim and, specifically, is to address the parties' arguments as to whether Ark. Code Ann. § 11-9-519(c) and (f) allow his claim.

## 2. *Evidence of Permanent Total Disability*

McDonald's second point on appeal challenges the Commission's finding that he failed to prove permanent and total disability. As previously mentioned, the Commission concluded that McDonald was not entitled to permanent and total disability benefits under the facts of the case even if his claim were statutorily allowed.

When an appeal is taken from the denial of a claim by the Workers' Compensation Commission, the substantial-evidence standard of review requires that we affirm the decision if the Commission's opinion displays a substantial basis for the denial of relief. *Dalton v. Allen Eng'g Co.*, 66 Ark. App. 201, 989 S.W.2d 543 (1999). In determining the sufficiency of the evidence to support the findings of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if those findings are supported by substantial evidence. *Winslow v. D & B Mech. Contrs.*, 69 Ark. App. 285, 13 S.W.3d 180 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Dalton v. Allen Eng'g Co., supra.* Although the appellate court defers to the Commission on issues involving the weight of the evidence and the credibility of the witnesses, the Commission may not disregard testimony and is not so insulated as to render appellate review meaningless. *Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001).

Evidence introduced at the hearing included medical reports, McDonald's testimony, the testimony of vocational rehabilitation counselor Heather Naylor, psychological reports, and

other documents. The Commission noted Naylor's compilation of suitable employment positions available to McDonald in his community within his physical, mental, and education abilities. It found that he had begun receiving Social Security disability benefits and that he had even less motivation to seek employment than before. The Commission concluded:

> [T]he evidence demonstrated that he is [at] least able to work in a sedentary work capacity, earning meaningful wages, and that there are jobs within his capacity available for him locally. The claimant has not proven by a preponderance of the evidence that he is permanently totally disabled.

McDonald was forty-six years old at the time of the hearing and lived with his sister. He testified that he graduated from high school but was unable to read, had difficultly performing simple math, and could write only his signature. He was in the Army National Guard for two years but never advanced beyond the rank of E-1 and was dishonorably discharged after being absent without leave for approximately two months. He worked on a horse ranch in Texas for two years where he groomed horses. He worked at a printing shop in Illinois for six months, but he could not distinguish the red ink from the black ink because of his color blindness. He worked in the construction of chicken houses for about twenty years. In his work for appellee Batesville Poultry Equipment, he assisted in placement of large ventilation fans but performed none of the electrical work. His sister took him to K-Mart to seek a job before his third surgery, while he was still on crutches. K-Mart did not hire him, and he made no further attempts to find a job.

At the request of his Social Security attorney in August of 2002, McDonald enrolled in a vocational program at the Hot Springs Rehabilitation Center. He testified that his easiest job there was putting brass pieces together for gas caps and putting them in a machine to be stamped, that he was paid for piecework, that he could not "put out some pieces to make any money," and that he had a disagreement with one of the project managers because he was not making enough money. He received a psychological evaluation, vocational counseling, and medical evaluation, but did not pursue the opportunity for additional physical therapy for his leg because he was still seeing Dr. Jay Lipke in Little Rock. He testified that he received a two-week pass to go home from the Hot Springs program when the suicide of a close friend caused him

emotional problems. He said he went back briefly but was told there was not enough for him to do; he denied dropping out of the program.

At the time of the hearing, McDonald used a cane to walk and to assist with balance, and he needed his sister's help to climb the stairs to the second-floor hearing room. He testified that he was unable to walk farther than fifteen feet without stopping to sit because of pain. He took Darvocet for pain, Lorcet for stress, a blood-pressure medication, Celebrex as a recent replacement for Vioxx to treat arthritis, and a sleeping pill at night. He said that he still had to get up at night when his leg went numb, he was unable to sit more than five or ten minutes, and he had to stand to regain circulation. He testified that he went deer hunting in 2000 or 2001 but sat on a stool on the ground because he could not get up into a deer stand; he tried fishing for about half an hour but could not sit in the boat. He said that he did not think people would hire a handicapped person and would not hire him because they did not want him to get any more "hurter."

Naylor gave extensive testimony regarding her vocational evaluation of McDonald. She testified that she interviewed him on June 2, 2000, questioning him about his past work history; that she met with Dr. Lipke in June of 2000; and that she later conducted written communication with Dr. Lipke to learn McDonald's physical limitations and job restrictions. She also testified that she conducted three labor market surveys of suitable employment for McDonald, beginning in July of 2000 and ending in December of 2001, and afterward reviewed additional information about his medical condition. She opined that McDonald was able to earn meaningful wages in some capacity; that there were jobs available within his community as of December 2001 that he could possibly perform, such as theater ticket taker and sewing machine operator; but that she did not know as of the time of the hearing if those jobs were still available. She testified that, having heard McDonald testify in the hearing, and because he mentioned that he could not read very well, she would question whether he could be a telemarketer. She stated that she was not authorized to do any testing. She said that she had formed her opinions before seeing information about testing that was performed in Hot Springs, which she received about a week before the hearing.

A psychological screening report performed for rehabilitation services on July 10, 2002, states that McDonald was cooperative during testing, that he appeared to function in the borderline

range with learning disabilities in reading and written expression, and that he expressed interest in locating employment. The licensed psychological examiner who conducted the testing noted that, besides the leg injury, McDonald reported poor eyesight and appeared to have a hearing loss "as this examiner had to talk loudly to him and frequently repeat information." Vocational implications in the report included difficulties in learning complex tasks, reading advanced technical materials, obtaining satisfactory grades due to poor reading skills, studying independently, and maintaining adequate production level if more than simple academic skills were required. Also listed were difficulty with advanced computation or mathematics, with spelling tasks, and with tasks requiring detailed instructions. Further noted were inability to perform work tasks involving extensive communication, inability to perform tasks that involve writing, inability to read assigned written communications, and slow task performance. Other implications were possible difficulty assessing consequences of decision alternatives, possible need for assistance "to plan steps to achieve vocational objective," possible difficulty "implementing vocational plan on own initiative," and probable slow learning of training or work tasks. The report recommended vocational guidance and counseling, and it concluded that McDonald "may reasonably be expected to sustain functioning by means of semiskilled employment which is medically feasible."

A psychiatric consultation report of the Hot Springs Rehabilitation Center on September 11, 2002, states that McDonald presented "with psychiatric diagnosis of learning disorder, emphasis in reading and written expression as well as borderline intellectual functioning." His psychiatric symptoms included mood disturbance, severe anxiety, and even suicidal statements.

We hold that no substantial evidence supports the Commission's conclusion that McDonald is not permanently and totally disabled. The Commission relied in significant part on Naylor's assessment that jobs were available to McDonald. Naylor testified, however, that her assessment of available jobs was produced before the psychological and psychiatric reports were made, and she testified that she had not considered them prior to forming her opinion. Additionally, the Commission ignored these psychological and psychiatric reports, which corroborated McDonald's testimony that he is functionally illiterate and which clearly assessed further limitations on his ability to perform work. We

hold that reasonable minds could not come to the conclusion that McDonald is not totally and permanently disabled.

We reverse the Commission's factual determination that McDonald was not permanently and totally disabled. His entitlement to benefits for permanent total disability, however, is not resolved by this point alone. We reverse and remand to the Commission for a determination as to whether McDonald's claim for permanent and total disability is statutorily allowed.

Reversed and remanded.

ROAF and GLOVER, JJ., agree.