2009 Ark. App. 776

**Robert MAULDING, Appellant,**

v.

**PRICE'S UTILITY CONTRACTORS, INC.; Cincinnati Indemnity Co., Inc.; Second Injury Fund; and Death & Permanent Total Disability Fund, Appellees.**

**No. CA 08–1449.**

Court of Appeals of Arkansas.

Nov. 18, 2009.

Rehearing Denied Jan. 6, 2010.

Diana M. Maulding, Little Rock, for appellant.

Frye Law Firm, P.A., by: Cynthia E. Rogers, North Little Rock, for appellees.

M. MICHAEL KINARD, Judge.

Appellant Robert Maulding appeals from the Commission's opinion affirming and adopting the decision of the administrative law judge (ALJ), who found that appellant is not permanently and totally disabled; that he is entitled to a ten-percent permanent anatomical impairment rating; that, for purposes of calculating appellant's average weekly wages, appellant was not a full-time employee at the time of his injury; and that Cincinnati was entitled to a three-percent offset against future amounts owed for its previous overpayment of benefits. Appellees Price's Utility Contractors, Inc. (Price's Utility) and Cincinnati Indemnity Co. (Cincinnati) cross-appeal the ALJ's findings that appel-

lant sustained wage-loss disability in the amount of twenty-five percent and that the Second Injury Fund is not liable for the wage-loss benefits. Appellee Second Injury Fund (SIF) has also filed a brief. We affirm on both direct appeal and cross-appeal.

Appellant began working for appellee-employer Price's Utility in 1977. He worked as a construction worker, and while he had begun working in a supervisory capacity by the time of his injury, he was still required to perform heavy labor. On April 3, 2006, appellant sustained a compensable back injury when he fell through a barn roof approximately sixteen feet to the ground. Appellant sustained vertebral spine fractures at L1 and L3.[1] Appellant underwent a double kyphoplasty on L1 and L3 on May 15, 2006. The parties stipulated that appellant reached maximum medical improvement on July 21, 2006. A functional capacity evaluation on July 17, 2006, showed that appellant was capable of performing light duty work. Appellant used vacation time from the date of his injury until August 31, 2006, when he was terminated because there was no light-duty work available.

The issues litigated before the ALJ included appellant's correct average weekly wage pursuant to Ark.Code Ann. § 11–9–518 (Repl.2002) and whether he had previously been paid temporary disability benefits and permanent disability benefits for anatomical impairment at an incorrect rate; whether Price's Utility is bound by its prior acceptance of a thirteen-percent (13%) anatomical impairment, and if not, whether appellant's correct anatomical impairment is ten percent (10%) or thirteen percent (13%) to the body as a whole; the SIF's contention that the extent of disability is a premature issue until the vocational

1. Some medical reports indicate that there was a third fracture at L2.

rehabilitation process has been completed; permanent and total disability, or in the alternative, wage-loss disability in excess of appellant's permanent anatomical impairment; SIF liability; and evidentiary issues that arose during the course of the hearing. We will discuss the Commission's rulings as they relate to each issue on appeal.

The appellate court's standard of review in workers' compensation cases has been set forth as follows:

> It is settled law that on appellate review of workers' compensation cases, we view the evidence and all reasonable inferences from it in the light most favorable to the Commission's findings. A decision of the Commission is reversed only if we are convinced fair-minded persons using the same facts could not reach the conclusion reached by the Commission. In our review, we defer to the Commission in determining the weight of the evidence and the credibility of the witnesses. The issue is not whether we may have reached a different conclusion or whether the evidence might have supported a contrary finding.

*Ellison v. Therma–Tru,* 66 Ark.App. 286, 289, 989 S.W.2d 927, 928 (1999) (citations omitted). While we normally review only the opinion of the Commission, we consider both the Commission's opinion and that of the ALJ when the Commission affirms and adopts the conclusions of the ALJ, as it did in the present case. *Death & Permanent Total Disability Trust Fund v. Branum,* 82 Ark.App. 338, 107 S.W.3d 876 (2003).

### Direct Appeal

I. *Substantial Evidence Supports the Commission's Finding that Appellant Is Not Permanently and Totally Disabled.*

For his first point on appeal, appellant argues that the Commission erred in finding that he is not permanently and totally disabled. Appellant points to Commissioner Hood's concurring and dissenting opinion, in which the Commissioner states that the ALJ considered only the wage-loss claim and did not conduct the relevant inquiry into appellant's entitlement to permanent and total disability benefits. However, Commissioner Hood concedes that "[t]he same factors considered when analyzing wage loss disability claims are usually considered when analyzing permanent and total disability claims." As explained below, we hold that the Commission's finding that appellant failed to establish that he is permanently and totally disabled is supported by substantial evidence.

A worker who sustains an injury to the body as a whole may be entitled to wage-loss disability in addition to his anatomical loss. *See, e.g., Glass v. Edens,* 233 Ark. 786, 346 S.W.2d 685 (1961). The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Emerson Elec. v. Gaston,* 75 Ark.App. 232, 58 S.W.3d 848 (2001). In considering claims for permanent partial disability benefits in excess of the employee's percentage of permanent physical impairment, the Workers' Compensation Commission may take into account, in addition to the percentage of permanent physical impairment, such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his or her future earning capacity. Ark.Code Ann. § 11–9–522(b)(1) (Repl.2002). These "other matters" include motivation, post-injury income, credibility, demeanor, and a multitude of other factors. *See Grimes v. North Am. Foundry,* 316 Ark. 395, 872 S.W.2d 59 (1994). In considering factors that may affect an employee's future earn-

ing capacity, the Commission considers the claimant's motivation to return to work, since a lack of interest or a negative attitude impedes an assessment of the claimant's loss of earning capacity. *Logan Cnty. v. McDonald,* 90 Ark.App. 409, 417, 206 S.W.3d 258, 263 (2005).

Permanent total disability means inability, because of compensable injury or occupational disease, to earn any meaningful wages in the same or other employment. Ark.Code Ann. § 11–9–519(e)(1) (Repl. 2002). The burden of proof is on the employee to prove inability to earn any meaningful wage in the same or other employment. Ark.Code Ann. § 11–9–519(e)(2). Here, the Commission, in adopting the ALJ's opinion, found that appellant failed to establish that he is permanently and totally disabled. The ALJ found that appellant was entitled to a twenty-five-percent wage loss in excess of his ten-percent permanent anatomical impairment.

Despite appellant's argument to the contrary, a review of the record reveals that the ALJ considered the proper factors in making the above findings. Appellant was sixty-one years old at the time of the hearing. Appellant received a bachelor's degree in forestry in 1975, but never subsequently worked in forestry. His work history included service in the Air Force and work in a body shop, during which time he lost the ability to see out of his left eye due to a work-related injury. In addition, appellant built the house he currently lives in and at one time could dismantle cars and rebuild them. The ALJ noted that appellant's symptoms had "not prevented him from driving or riding to hot rod shows, with some antique shopping."

Appellant points to a statement by Dr. Eric Akin, appellant's treating neurosurgeon, that appellant was "totally dis-abled by this injury" and argues that the Commission arbitrarily ignored Dr. Akin's opinion. This argument fails to consider that the Commission is charged with the duty of determining disability based upon consideration of medical evidence *and other matters affecting wage loss,* such as the claimant's age, education, and work experience. *See Logan Cnty. v. McDonald,* 90 Ark.App. 409, 417, 206 S.W.3d 258, 263 (2005). Thus, Dr. Akin's opinion—which the Commission was not required to accept as true—was hardly conclusive on the issue of wage loss or permanent total disability.

The results of a July 2006 functional capacity evaluation (FCE) showed appellant to be capable of work in the "light" category. Appellant demonstrated the ability to occasionally lift or carry up to thirty pounds when lifting from knee to shoulder level; he demonstrated the ability to lift only ten pounds from the floor level. He demonstrated limited ability to perform stooping and bending. Appellant's work history consisted of heavy labor construction work, which is considerably more physically demanding than the light category that appellant is capable of performing following his back injury. However, the ALJ found credible expert witness Heather Taylor's identification of several aspects of appellant's "skills, education, and experience which are transferable, including his five or six years of management experience at Price's Utility Contractors; his experience, though very limited, bidding jobs; his stable work history; his ability to follow instructions; his ability to learn tasks easily by direction; his experience performing repetitive tasks without difficulty throughout the day; his experience operating equipment; and his college degree." Thus, while appellant was no longer capable of performing his job as a construction worker, there was

substantial evidence that he was employable.

■ As to Ms. Taylor, who testified as an expert in "re-employment issues," appellant argues that her testimony was conflicting and that it was error to admit her as an expert witness. As the ALJ noted, any conflict in Ms. Taylor's testimony simply goes to the weight it should be given. Ms. Taylor's qualifications include a master's degree in rehabilitation counseling completed in 1999, certification as a rehabilitation counselor, and employment as a rehabilitation counselor. We hold that the ALJ did not abuse his discretion in allowing Ms. Taylor to testify as an expert.

Appellant seems to argue that he is permanently and totally disabled because he could not perform his former job or obtain a different job earning the same wage ($16.90 per hour). He contends that he is permanently and totally disabled because, despite his best attempts to find work, he was unable to find a job earning a "meaningful wage" under section 11–9–519. Appellant contends that his testimony that he considered a meaningful wage to be what he was making at the time of his injury—$16.90 per hour plus two weeks vacation time and health insurance—was the only evidence of the term "meaningful wage" and that the Commission would "have to resort to something outside the record to find $16.90/hour was not a meaningful wage." Questions of weight and credibility are within the sole province of the Commission, which is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Cottage Café, Inc. v. Collette*, 94 Ark.App. 72, 226 S.W.3d 27 (2006). Thus, we hold that substantial evidence supports the Commission's finding that appellant

failed to meet his burden of proving that he is permanently and totally disabled.

Finally, appellant argues that Rule 615 of the Arkansas Rules of Evidence regarding exclusion of witnesses was violated when Ms. Taylor was permitted to testify regarding potential income for appellant. However, the Commission is not bound by technical or statutory rules of evidence. Ark.Code Ann. § 11–9–705(a)(1). Thus, we affirm on this point.

II. *Substantial Evidence Supports the Commission's Finding that Appellant Was Entitled to a Ten-percent (10%) Permanent Anatomical Impairment.*

■ For his second point on appeal, appellant argues that the Commission erred in not awarding him an additional five-percent (5%) permanent anatomical impairment. Appellant argues that the Commission should have found that he sustained three—not two—lumbar fractures. He argues that he is entitled to an additional five-percent permanent impairment rating for an L2 fracture. Appellant acknowledges that the record refers to three lumbar fractures in some places and two lumbar fractures in others.

The ALJ explained in detail his finding that appellant's appropriate anatomical impairment rating is ten percent (10%) to the body as a whole—despite there being some evidence of three fractures, not two. The ALJ found that "a preponderance of the credible evidence establishes that the claimant sustained two levels of lumbar compression and not three levels." The Commission has the duty of weighing conflicting medical evidence and translating it into findings of fact. *See Hamilton v. Gregory Trucking*, 90 Ark.App. 248, 205 S.W.3d 181 (2005). There is substantial evidence in the record to support the ALJ's finding that appellant sustained only

two lumbar fractures. Thus, we affirm on this point.

III. *Substantial Evidence Supports the Commission's Finding that Appellant Was Not a Full-time Employee at all Relevant Times.*

For his third point, appellant argues that the Commission erred in finding that appellant was not a full-time employee at all relevant times. The ALJ, in the opinion adopted by the Commission, found that appellant was not a full-time employee and that appellees correctly calculated his average weekly wage by dividing his actual earnings for the fifty-two week period immediately preceding the week of his injury by the number of weeks actually worked. The relevant statute provides:

> (a)(1) Compensation shall be computed on the average weekly wage earned by the employee under the contract of hire in force at the time of the accident and in no case shall be computed on less than a full-time workweek in the employment.
>
> . . . .
>
> (c) If, because of exceptional circumstances, the average weekly wage cannot be fairly and justly determined by the above formulas, the commission may determine the average weekly wage by a method that is just and fair to all parties concerned.

Ark.Code Ann. § 11–9–518 (Repl.2002).

In the case at hand, appellant stated in a response to interrogatories that he "sometimes work[ed] less than 40 hours per week because I wanted to and could." Appellant testified that appellee-employer consented to an arrangement by which appellant could take time off without pay when he desired to do so, as long as there were enough people present to get the work accomplished; that there was always enough work available if he chose to work forty hours per week; that he was allowed to take this time off from work without pay "to do some of the stuff I like to do and save my vacation time in case I had to go back to the hospital"; that this arrangement began before he began to have heart problems in 2003; and that a lot of the time he took off without pay was for personal things (including traveling), although some of the time could have been taken off for bad weather.

■ Appellant argues that, because no exceptional circumstances existed in this case, it was error for the Commission to compute his earnings by taking his annual earnings immediately preceding the injury and dividing by fifty-two weeks, without taking into account his vacation time. The Commission reasoned that exceptional circumstances existed because appellant took unpaid time off from work for personal reasons. According to appellant, this reduced his average weekly wage from $676 per week to $612 per week. Appellant points to *Chapel Gardens Nursery v. Love-lady*, 47 Ark.App. 114, 885 S.W.2d 915 (1994), in which this court held that it was not error for the Commission to compute the appellee-claimant's compensation on the basis of a full-time work week under Ark.Code Ann. § 11–9–518(a)(1). In *Chapel Gardens*, the claimant was a seasonal worker under an employment contract that provided for a forty-hour work week whenever work was available. The instant case is easily distinguishable from *Chapel Gardens*. Here, appellant's agreement with his employer allowed him to take unpaid time off from work when he wanted to. Thus, the fact that appellant was working less than full time was his decision and was not related to the availability of work. We see no reason why

this could not be considered an "exceptional circumstance" under the statute.

IV. *The Commission Did Not Err in Approving a Three-percent (3%) Offset Award to Appellee Cincinnati Indemnity Co., Inc. Against Appellant's Future Benefits.*

Finally, appellant contends that the Commission erred in approving a three-percent offset for overpayment of appellant's permanent anatomical impairment rating to Cincinnati against his future benefits. Appellees initially accepted and paid benefits for a thirteen-percent permanent partial disability. After Dr. Akin testified at a December 2006 deposition that the thirteen-percent rating was an error and that appellant's impairment rating for two compression fractures should have been ten percent, appellees contended that they were entitled to a credit for overpayment. The ALJ found appellant's impairment rating to be ten percent to the body as a whole and held that appellees were entitled to a credit for any overpayment of benefits beyond the appropriate ten-percent rating.

Appellant argues that the payment of benefits for a thirteen-percent impairment rating was a voluntary payment and cites the common-law rule that "when one pays money on demand that is not legally enforceable, the payment is deemed voluntary." *Vandiver v. Banks,* 331 Ark. 386, 393, 962 S.W.2d 349, 353 (1998). Absent fraud, duress, mistake of fact, coercion, or extortion, voluntary payments cannot be recovered. *Id.* Appellant also seeks to characterize appellees' acceptance of the thirteen-percent impairment rating as a "stipulation" that is binding on them.

We find none of appellant's arguments to be persuasive. Arkansas Code Annotated section 11–9–807(a) (Repl.2002) provides: "If the employer has made advance payments for compensation, the employer shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due." The Commission has the "full power and authority ... [t]o approve agreements, make, modify, or rescind awards, and make and enter findings of fact and rulings of law." Ark. Code Ann. § 11–9–207(a)(5) (Repl.2002). Further, the legislature has given the Commission the power to "order the reimbursement of employers for amounts advanced." Ark.Code Ann. § 11–9–207(a)(7). Appellant contends that the amount at issue was not an advance payment "because Cincinnati's position throughout the case has been that there was *no* wage loss." Nonetheless, the ALJ's opinion, which was adopted by the Commission, cites numerous examples of the Commission awarding a credit against future compensation for overpayment of permanent partial disability benefits. We hold that it was not error for the Commission to do so in this case.

Furthermore, there are sound policy reasons for awarding a credit when the Commission finds that there has been an overpayment of benefits. To allow a claimant to receive and not be required to account for an overpayment of benefits sends a message to employers that they have nothing to gain by accepting a claim as compensable because they are not going to be entitled to a credit if the claim is eventually found not compensable. Here, appellees were acting in good faith and appellant should not now receive a windfall as a result.

Based on the foregoing, we affirm the Commission's award of a credit to appellees for any overpayment of the impairment rating.

*Cross–Appeal*

I. *Substantial Evidence Supports the Commission's Award of Twenty-five Percent (25%) Permanent Partial Disability to Appellant in Excess of His Permanent Anatomical Impairment.*

█ Appellees Price's Utility and Cincinnati contend that appellant is not entitled to any amount of wage-loss disability benefits. They argue that appellant is not entitled to permanent partial disability in excess of the percentage of permanent physical impairment established by objective medical findings because he "refuse[d] to participate in or cooperate for reasonable cause with either an offered program of rehabilitation or job placement assistance." Ark.Code Ann. § 11–9–505(b)(3). Because appellees failed to raise this argument below, it is not preserved for appellate review. *Finley v. Farm Cat, Inc.,* 103 Ark.App. 292, 288 S.W.3d 685 (2008).

II. *Substantial Evidence Supports the Commission's Finding that SIF Is Not Liable for Payment of any Wage-loss Benefits Awarded.*

Appellees argue that if this court affirms appellant's wage-loss award, SIF should be held liable for those benefits. Appellees point to both appellant's blindness in his left eye and to his heart problems and other health issues. Appellees contend that these are pre-existing conditions that have combined with appellant's compensable back injury to produce his current disability status.

The ALJ found that appellant's loss of vision in one eye does not cause any greater disability than the disability produced by the back injury considered alone. The ALJ reasoned that while the loss of vision would prevent appellant from obtaining his commercial driver's license and might affect his ability to weld, appellant was never employed as either a commercially licensed driver or a welder before or after his eye injury. After his eye injury, appellant obtained a college degree and worked for Price's Utility from 1977 to 2006, and the only limitation that his loss of vision imposed was that co-workers knew not to throw tools in his direction. The ALJ also noted that appellant's loss of vision in one eye does not prevent him from being able to read or study if he chooses to do so and does not contribute to his physical limitations due to back pain. Furthermore, the ALJ found that appellant's prior kidney stones and his 2003 heart stint are neither pre-existing disabilities nor impairments. *See Mid–State Construction Co. v. Second Injury Fund,* 295 Ark. 1, 746 S.W.2d 539 (1988) (holding that for SIF liability to attach a claimant's prior impairment must have been of a physical quality sufficient in and of itself to support an award of compensation had the elements of compensability existed as to the cause of the impairment).

█ The relevant statute provides:

If any employee who has a permanent partial disability or impairment, whether from compensable injury or otherwise, receives a subsequent compensable injury resulting in additional permanent partial disability or impairment so that the degree or percentage of disability or impairment caused by the combined disabilities or impairments is greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of combined disabilities or impairments, then the employer at the time of the last injury shall be liable only for the degree or percentage of disability or impairment that would have resulted

from the last injury had there been no preexisting disability or impairment.

Ark.Code Ann. § 11–9–525(b)(3) (Supp. 2009). The stated purpose of the SIF is "to ensure that an employer employing a worker with a disability will not, in the event that the worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred while the worker was in his or her employment," thus encouraging employment of handicapped or disabled workers. Ark. Code Ann. § 11–9–525(a)(1); *Nelson v. Timberline Intern., Inc.*, 332 Ark. 165, 964 S.W.2d 357 (1998). For the Second Injury Fund to be liable under workers' compensation law, the employee must have suffered a compensable injury at his present place of employment, prior to that injury the employee must have had a permanent partial disability or impairment, and the disability or impairment must have combined with the recent compensable injury to produce the current disability status.

*Rice v. Georgia Pacific Corp.*, 72 Ark.App. 148, 154, 35 S.W.3d 328, 332 (2000).

 At issue in the present case is whether appellant's preexisting health problems (blindness in one eye, heart problems, kidney stones) combined with his back injury to produce his current disability status. The Commission found that appellant's previous injuries, when combined with his compensable back injury, did not render him any more disabled than the back injury alone would have. After reviewing this point under the proper standards, we affirm the Workers' Compensation Commission.

Affirmed on direct appeal; affirmed on cross-appeal.

PITTMAN and HART, JJ., agree.