Cite as 2024 Ark. App. 483

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-23-409

|  |  |
|---|---|
| FRANCINE A. MURPHY<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF CORRECTION–GRIMES UNIT AND ARKANSAS PUBLIC EMPLOYEE CLAIMS DIVISION<br><br>APPELLEES | Opinion Delivered October 9, 2024<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G802123]<br><br>AFFIRMED |

### ROBERT J. GLADWIN, Judge

Appellant Francine A. Murphy ("Murphy") appeals a decision of the Arkansas Workers' Compensation Commission (the "Commission") finding that she is not permanently and totally disabled due to an injury she incurred in the scope and course of her employment with appellee, Arkansas Department of Correction–Grimes Unit, that resulted in the loss of her left eye. She also appeals the Commission's finding that she was entitled to only $1,500 for facial disfigurement. We affirm.

### I. *Background Facts*

Murphy—a fifty-eight-year-old female—was employed with the Arkansas Department of Correction–Grimes Unit. On March 17, 2018, while Murphy was at work, she fell and sustained an injury that resulted in the total loss of her left eye. Despite surgical efforts to

salvage Murphy's left eye, it ultimately had to be surgically removed on April 3, 2018. On October 30, 2018, Murphy underwent another surgical procedure to improve the fit of her prosthetic eye. Appellees, Arkansas Department of Correction–Grimes Unit and Arkansas Public Employee Claims Division (hereinafter referred to as "appellees"), paid benefits pursuant to Arkansas Code Annotated section 11-9-521 (Repl. 2012) for the scheduled injury, which resulted in the permanent impairment of Murphy's left eye.

A full hearing was held on May 27, 2022, in front of an administrative law judge ("ALJ") on the remaining issues of Murphy's claim for permanent and total disability benefits or, in the alternative, wage loss and also benefits for facial disfigurement. Murphy testified at the hearing and also called Dr. Tanya Rutherford Owens ("Dr. Owens"). Additionally, Murphy's medical records were admitted into evidence as well as a labor-market survey generated by Dr. Owens—Murphy's vocational rehabilitation expert.

## A. Testimony

Murphy testified that she has a high school education and trained to be a secretary but dropped out of the program due to her grades. For twelve years, Murphy worked as an attendant at an assisted-living facility until she was hired by the appellee. While employed by the appellee, Murphy was a food-production manager, which included supervising the inmates while they were cooking, conducting searches, checking out kitchen tools to inmates, helping cook in the kitchen, making sure all kitchen utensils and tools were cleaned and locked up, and "lots of paperwork." She acknowledged having to do some computer work

2

when answering quizzes and completing annual classes. Murphy worked for the appellee for fifteen years.

Murphy testified that as a result of the fall, her left eye socket now "droops," and her prosthesis requires cleaning and examination every six months. Murphy alleged she lost all the benefits that were being provided by the appellees when her doctor released her to maximum medical improvement and, furthermore, that when she returned to work, she was given the option to either take an early retirement or be terminated.

Murphy testified that her driving has become limited, that she drives only during certain times of the day, and the farthest she drives is approximately one mile to Walmart and to church. She acknowledged that she can see out of her right eye with her prescription glasses and sunglasses but that she is more comfortable wearing dark sunglasses in case her prosthetic eye falls out. She expressed that she is also very fearful of losing her right eye. Murphy testified that she relies on family members to drive her if she needs to go somewhere farther than a mile away; that she prefers to have someone walk in front of her in case she loses her balance; and that family primarily cooks for her.

Dr. Owens testified via Zoom at the hearing. Murphy maintains that because the appellees did not offer her any vocational rehabilitation services, she sought the services of Dr. Owens to run a labor-market survey for the Newport, Arkansas, area. Dr. Owens testified that she has a Ph.D. in rehabilitation education and research; has worked since 1990 in the areas of both vocational rehabilitation and life-care planning; and has been self-employed doing work—such as in this case—since 2011 wherein she evaluates an individual's loss of

earning capacity or assists in determining what an individual needs in terms of future goods and services as a result of the person's disability. The report generated fifteen jobs in the Newport area on the dates requested and identified the requirements of each job. Dr. Owens reviewed several of the jobs listed on her report with the court, including a cashier/front-end services job with Walmart; data-entry job at Jacksonville Funeral Home; cashier at Murphy USA; and day shift worker at Taco Bell.

Murphy explained that she reviewed all the jobs listed on the survey performed by Dr. Owens, but she did not meet the qualifications for any of them. Specifically, Murphy testified that all the jobs required activities outside her limitations—pushing, pulling, standing for long periods, bending, or sitting for long periods—or skills outside her ability, such as proficiency in Microsoft Office. At the hearing, Murphy was asked about the data-entry position at Jacksonville Funeral Home, identified in Dr. Owens's report. Murphy stated, however, that because the job listing stated that proficiency in Microsoft Word and other related computer programs was required, she was not qualified for the job and that she could not be trained for the position. Furthermore, Murphy testified that she could not drive to the funeral home, which is approximately two miles from her residence.

On cross-examination, Dr. Owens testified that she has never met Murphy; that she has not reviewed any of her medical records; and that she could offer no opinion on whether Murphy could perform the jobs identified in her report. Dr. Owens also testified that she did not find any rehabilitation programs for Murphy and that she never spoke to Murphy on the phone. Murphy acknowledged that she did not follow up on any of the jobs identified

4

in Dr. Owens's report and that she was not looking for work. She testified that every month, she receives approximately $1,094 in disability retirement and $1,344 in Social Security disability.

## B. Medical Evidence

Dr. John D. Pemberton performed the enucleation of Murphy's left eye following the injury. In a follow-up appointment report dated June 17, 2019, Dr. Pemberton noted that Murphy is "[d]oing well, has adapted for ADLs," which is activities of daily living. He also noted that her prosthesis fit better after her "last revision." With regard to driving, Dr. Pemberton noted that Murphy had visual acuity in her right eye of 20/40 or better but also noted "vision worse than 20/40 . . . in better seeing eye was discussed and driving was not recommended and told it did not meet the state standards of visual requirement for drivers license." Murphy's postappointment report indicates that Dr. Pemberton opined that Murphy "was at maximum surgical improvement indicating no further surgery was anticipated" and that "yearly follow-up of the left eye would continue." The report also indicated that Dr. Pemberton educated Murphy "on the importance of smoking cessation."

On August 25, 2020, Murphy was sent for an impairment rating with Dr. Barry D. Baskin. Dr. Baskin noted that Murphy's chief complaint was "disfigurement" and that "she wears dark glasses and keeps her eye covered up." Furthermore, Dr. Baskin noted that Murphy was experiencing "some emotional and behavioral deficits as a result of her appearance and social withdrawal." Regarding her physical examination, Dr. Baskin noted "she does have fairly good lid closure on the left" and "she has good vision out of the right

5

eye per her records and her admission today." Additionally, Dr. Baskin wrote that "she gets around fairly well," and "her gait is normal" but that "she has trouble with depth perception." As to her impairment rating, Dr. Baskin wrote:

> This would give her a 25% impairment to the visual systems which is equal to a 24% impairment to the whole person. Ms. Murphy has some degree of disfigurement associated with anxiety and depression. Turning to . . . the guides of emotional or behavioral disturbances Ms. Murphy would have a mild limitation of daily social and interpersonal functioning as a result of her perception of disfigurement with her left eye enucleation and prothesis. This would give her an additional 10% whole person impairment. Next, turning to the combined values chart . . . Ms. Murphy's 24% impairment is combined with her 10% impairment to the whole person to give her a 32% whole person impairment.

Finally, on October 1, 2021, Tanya L. Walker ("Walker"), an APRN with Unity Health Harris Medical Center, wrote a letter stating that "Francine A. Murphy is disabled due to the loss of her left eye. The injury occurred on 3-17-2018." Murphy's primary care physician subsequently signed the report on November 23, 2021.

## C. Procedural History

On August 23, 2022, the ALJ found that Murphy proved by a preponderance of the evidence that she is permanently and totally disabled as a result of the work injury and also entitled to an additional $1,500 for facial disfigurement pursuant to Arkansas Code Annotated section 11-9-524 (Repl. 2012). The appellees timely appealed the ALJ's award to the Commission, and on March 17, 2023, the Commission issued an opinion finding that Murphy was not permanently and totally disabled but agreed that she was entitled to the $1,500 award. Additionally, the Commission found appellees liable for a 32 percent anatomical impairment rating. Murphy filed a notice of appeal of the Commission's finding

6

that she did not prove by a preponderance of the evidence that she is permanently and totally disabled, which she argues is not supported by substantial evidence. Appellees filed a motion for reconsideration and cross-appealed the finding that Murphy is entitled to a 32 percent permanent impairment rating for the loss of her left eye as well as the $1,500 for disfigurement.

On June 29, 2023, the Commission unanimously found that appellees had paid Murphy for the loss of her eye and that she was not entitled to a 32 percent permanent impairment rating for her scheduled injury. The Commission found that Murphy was entitled, however, to the separate facial-disfigurement award of $1,500. Appellees filed a motion to withdraw its cross-appeal, and in an order dated August 23, 2023, this court entered an order granting appellees' motion.

## II. *Standard of Review*

It is settled law that on appellate review of workers'-compensation cases, we view the evidence and all reasonable inferences from it in the light most favorable to the Commission's findings. *Maulding v. Price's Util. Contractors, Inc.*, 2009 Ark. App. 776, 358 S.W.3d 915. A decision of the Commission is reversed only if this court is convinced fair-minded persons using the same facts could not reach the conclusion reached by the Commission. *Id.* In our review, we defer to the Commission in determining the weight of the evidence and the credibility of the witnesses. *Id.* The issue is not whether we may have reached a different conclusion or whether the evidence might have supported a contrary finding. *Id.*

7

III. *Points on Appeal*

Murphy argues on appeal (1) that the Commission arbitrarily disregarded medical evidence; (2) that she proved by a preponderance of the evidence that she is permanently and totally disabled as a result of her injury; and (3) that she suffered permanent facial disfigurement pursuant to Arkansas Code Annotated section 11-9-524(a) and (b) (Repl. 2012).

IV. *Discussion*

A. Disregard of Medical Evidence

First, Murphy argues that the Commission arbitrarily disregarded medical evidence. Specifically, Murphy contends that the Commission ignored APRN Tanya Walker's opinion that she is "disabled due to the loss of her left eye." However, the record does not reflect that the Commission ignored Walker's opinion. In its August 23, 2022 order, the Commission held as follows:

> Dr. Pemberton reported on June 17, 2019 that the claimant was doing well, and had "adapted for ADLs," that is, Activities of Daily Living. Dr. Baskin assigned the claimant only a 32% whole-person impairment rating on August 25, 2020. Dr. Baskin opined that the claimant had only "a mild limitation of daily social and interpersonal functioning as a result of her perception of disfigurement with her left eye enucleation and prosthesis." Dr. Baskin did not opine that the claimant was permanently totally disabled, nor did he restrict the claimant's driving activities. The Full Commission therefore places minimal evidentiary weight on APRN Tanya Walker's subsequent opinion that the claimant was "disabled due to the loss of her left eye."

While the Commission may not arbitrarily disregard evidence submitted in support of a claim, we do not find that the record indicates disregard of Walker's assessment of Murphy's injury; rather, the Commission compared the medical evidence and assigned less weight to

8

Walker's assessment.  *See Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001).

Here, the Commission was confronted with two different medical opinions regarding the extent of Murphy's impairment. The Commission has the duty of weighing medical evidence, and the resolution of conflicting evidence is a question of fact for the Commission. *Ark. Highway & Transp. Dep't v. Work*, 2018 Ark. App. 600, 565 S.W.3d 138.  It is well settled that the Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force.  *Id.*  Accordingly, we do not find that the Commission arbitrarily disregarded Walker's medical opinion.

## B.  Permanent and Total Disability

Next, Murphy maintains that she proved by a preponderance of the evidence that she is permanently and totally disabled as a result of her injury.

"Permanent total disability" is defined as the "inability, because of compensable injury or occupational disease, to earn any meaningful wages in the same or other employment." Ark. Code Ann. § 11-9-519(e)(1) (Repl. 2012). Further, "[t]he burden of proof shall be on the employee to prove inability to earn any meaningful wage in the same or other employment." Ark. Code Ann. § 11-9-519(e)(2). When an appeal is taken from the denial of a claim by the Commission, the substantial-evidence standard of review requires that we affirm the decision if the Commission's opinion displays a substantial basis for the denial of relief.  *See McDonald v. Batesville Poultry Equip.*, 90 Ark. App. 435, 206 S.W.3d 908 (2005).

9

Thus, this court defers to the Commission on issues involving the weight of the evidence and the credibility of the witnesses. *Id.*

The loss of Murphy's left eye was undisputably a scheduled injury as set forth in Arkansas Code Annotated section 11-9-521. The statute states that an enucleated eye constitutes an injury for which an employee shall receive weekly benefits in the amount of the permanent partial-disability rate attributable to the injury for 105 weeks. Ark. Code Ann. § 11-9-521(a)(14). The appellees paid Murphy the required amount as a result of the impairment rating of 100 percent to Murphy's left eye. It is well established that an employee who sustains a scheduled injury shall not be entitled to permanent partial-disability benefits in excess of the percentage of her permanent physical impairment. *McDonald*, *supra*. However, if the scheduled injury is deemed to result in permanent and total disability, then a claimant will be entitled to total disability benefits. *Henderson State Univ. v. Haynie*, 269 Ark. 721, 600 S.W.2d 454 (1980).

Attendant factors relevant to whether a claimant is unable to earn any meaningful wages include medical evidence, age, education, experience, and other circumstances reasonably related to a claimant's earning power. *Rutherford v. Mid-Delta Cmty. Servs., Inc.*, 102 Ark. App. 317, 285 S.W.3d 248 (2008). Absent a finding of permanent total disability, a claimant who has suffered a scheduled injury is limited to the benefits listed in Arkansas Code Annotated section 11-9-521. In *Kirkendolph v. Department of Finance & Administration*, 2010 Ark. App. 786, the claimant relied on evidence showing that she would be unable to find a job in the local economy that fit within her restrictions. However, this court rejected

that argument and held that "[t]he evidence does reveal such a difficulty, but being in a market where jobs are scarce does not render a worker disabled for the purposes of workers' compensation." *Id.* at 7.

In *Beal v. Fairfield Bay Community Club, Inc.*, this court affirmed the Commission's denial of permanent and total disability largely on the basis of the claimant's lack of motivation to return to any form of gainful employment. 2011 Ark. App. 136. This court stated:

> Beal further testified that he had worked all of his life but that he has not returned to work because "they are not going to let him back out there, as no doctor is going to pass him on a physical and drug test and stuff." Beal is blind in his left eye, but admitted to having glaucoma before his injury. According to Beal he does not feel that there are any jobs he can perform and is now retired. The Commission disagreed and concluded that "the evidence shows that [Beal] is clearly not motivated to return to any form of gainful employment" and noted that Beal's lack of motivation is a valid consideration in its denial of Beal's wage-loss disability claim. *City of Fayetteville v. Guess,* 10 Ark. App. 313, 663 S.W.2d 946 (1984).

*Id.* at 2. In conclusion, this court held that the Commission's decision "more than adequately explains its decision and displays a substantial basis for the denial of relief." *Id.* at 3.

Here, the Commission found as follows:

> The claimant has not attempted to return to appropriate gainful employment since her compensable injury. The Full Commission again notes that the claimant is at least minimally proficient in use of a computer according to her testimony. Following enucleation surgery by Dr. Pemberton, Dr. Green reported on April 18, 2018 was able to read "instructions, pamphlets, or other written material." The claimant is literate even after surgery. The claimant informed the respondents on April 15, 2019 that she would be voluntarily retiring effective June 1, 2019. There is no evidence corroborating the claimant's testimony that the respondents forced or encouraged the claimant to retire from gainful employment. Dr. Pemberton reported on June 17,

11

2019 that the claimant was doing well, and had "adapted for ADLs," that is, Activities of Daily Living. Dr. Baskin assigned the claimant only a 32% whole-person impairment rating on August 25, 2020. Dr. Baskin opined that the claimant had only "a mild limitation of daily social and interpersonal functioning as a result of her perception of disfigurement with her left eye enucleation and prosthesis." Dr. Baskin did not opine that the claimant was permanently totally disabled, nor did he restrict the claimant's driving activities. The Full Commission therefore places minimal evidentiary weight on APRN Tanya Walker's subsequent opinion that the claimant was "disabled due to the loss of her left eye."

The claimant's attorney arranged for Rehabilitation Services with Tanya Rutherford Owen, Ph.D. beginning in February 2022. As the Full Commission has discussed, Dr. Owen identified at least 15 potential job openings for the claimant near the claimant's home in Newport, Arkansas. The evidence demonstrates that the claimant did not attempt to follow up on any of the jobs identified by Tanya Rutherford Owen. Dr. Owen's testimony demonstrates that neither the claimant never contacted her following the consultation report of February 3, 2022. The Full Commission recognizes the claimant's testimony the she is greatly restricted in her ability to drive a motor vehicle as a result of the compensable injury, surgery, and resulting 32% anatomical impairment. However, the claimant also testified that she is physically able to drive at least some distances in the area of Newport, Arkansas where the claimant resides. The claimant's demonstrated lack of interest in returning to work is an impediment to a full assessment of the claimant's contention that she is permanently and totally disabled. *Oller v. Champion Parts Rebuilders*, 5 Ark. App. 307, 635 S.W.2d 276 (1982). The Full Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Johnson v. Hux*, 28 Ark. App. 187, 772 S.W.2d 362 (1989). In the present matter, with regard to her contention that she is permanently totally disabled as a result of her compensable scheduled injury, the Full Commission finds that the claimant was not a credible witness.

Most of Murphy's allegations of error in the Commission's findings are focused on her testimony concerning her limitations after the injury. She maintains that she suffers from a loss of balance; that she relies on family to cook her meals and handle transportation that exceeds one or two miles; that "no employer would hire a 58-year-old lady with zero computer skills, who cannot drive and is a daily fall risk"; that she had to hire her own

12

vocational expert to explore available jobs; that she did not meet the requirements of any of the jobs identified by Dr. Owens; that she was forced into retirement because the appellees could not accommodate her restrictions; and that she has to wear sunglasses in public to avoid the possibility of her prosthetic eye falling out. However, as previously stated, it is within the Commission's sole province to determine credibility and the weight to be given to a witness's testimony, and the Commission is not required to believe the testimony of any witness but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *See Vann v. FedEx Freight, Inc.*, 2018 Ark. App. 353, 551 S.W.3d 432.

The Commission's order was detailed and specific regarding its reasons for not finding Murphy permanently disabled. We hold that fair-minded persons with the same facts before them could reach the same conclusion. Thus, because the Commission displayed a substantial basis for its denial of relief, we affirm the order of the Commission finding that Murphy is not permanently and totally disabled.

## C. Facial Disfigurement

Murphy's last argument on appeal is regarding the Commission's $1,500 facial-disfigurement award pursuant to Arkansas Code Annotated section 11-9-524(a) and (b). Specifically, Murphy contends that she is entitled to the entire $3,500 allowable under the statute rather than the $1,500 the Commission awarded. However, because Murphy did not appeal the Commission's facial-disfigurement award—and the appellees ultimately dismissed

13

their cross-appeal regarding the facial-disfigurement award—we do not reach the merit of Murphy's argument.

## V.  *Conclusion*

For the above-stated reasons, we affirm the decision of the Commission.

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Laura Beth York*, for appellant.

*Charles H. McLemore Jr.*, for separate appellee Public Employee Claims Division.