SLIP OPINION

Cite as 2017 Ark. App. 643

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-17-252

|  |  |
|---|---|
| WRIGHT STEEL & MACHINE, INC., AND SECURITY NATIONAL INSURANCE COMPANY APPELLANTS | Opinion Delivered November 29, 2017 APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G503555] |
| V. | |
| JAMES D. HEIMER APPELLEE | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellants Wright Steel & Machine, Inc., and Security National Insurance Company appeal from the decision of the Arkansas Workers' Compensation Commission (Commission) finding that appellee James Heimer had proved entitlement to additional medical treatment in the form of back surgery. Appellants argue that the Commission's decision is not supported by substantial evidence. We affirm.

Heimer began working for Wright Steel & Machine, Inc., in 2005 as a welder/fabricator. He said that his job required heavy lifting on a daily basis of an average of 50 to 100 pounds. Although the injury at issue here occurred in 2015, Heimer's medical records reflected a history of back pain dating back to at least 2009. In December 2009, Heimer saw his family physician for low back pain and numbness going down his left leg. He was referred to another doctor and received injections. Heimer eventually had surgery on both his neck and low back in 2012. He was off work for a few months to recover after

SLIP OPINION

his surgeries. Medical records from October 2012 showed that Heimer was doing "quite well" after his back surgery, that he had no significant leg pain remaining, that he had met all of his physical-therapy goals, and that he was released to full activity. Heimer said that he returned to his regular duties but started getting sore again about a year after surgery. He had what he called "normal aches and pains" in his back due to the heavy lifting and pain in his hip and thigh. He had prescriptions for pain medications for his low back and neck but said that he took them only when needed, which was not every day. He acknowledged having to miss work on occasion due to his pain. Medical records showed that he was seen by three doctors in 2014 for neck pain, back pain, and joint pain. Before his May 2015 injury, the last complaint of back pain in his medical records was from December 2014.

Steve Wright, one of the owners of Wright Steel & Machine, Inc., testified that Heimer seemed to do well immediately following his 2012 back surgery but later suffered a decline in his well-being and productivity. Wright said that it was obvious Heimer was in pain, that his pain medication affected his work, and that Heimer sometimes decided to go home due to the pain. Wright said that Heimer worked up until the May 2015 injury but he had missed a considerable amount of work.

Heimer testified that on May 6, 2015, after lifting heavy steel, he "went down" and experienced pain like never before. The pain was in his lower back, radiating down his left leg to his foot. He said that before this injury, he had pain in his thigh and around his hip, but he had not had this kind of leg pain and numbness into his foot since his 2012 surgery.

SLIP OPINION

Heimer reported his injury and saw a doctor the next day. He eventually had injections and two rounds of physical therapy but obtained no lasting relief. Heimer testified that he could no longer perform his job or activities like using a riding lawnmower.

In July 2015, Heimer was referred to Dr. Cathey for an independent medical evaluation. After examining Heimer and reviewing an MRI from June 2015, Dr. Cathey opined that Heimer was not a candidate for additional spinal surgery or other neurosurgical intervention. Dr. Cathey believed that Heimer had chronic degenerative lumbar disc disease and would likely suffer acute exacerbations in the future, but he was at maximum medical improvement with regard to the May injury. Heimer's condition did not improve, and he received a change of physician to Dr. Blankenship. Dr. Blankenship examined Heimer in November 2015 and noted his complaints of low back pain that radiated to his left hip, buttock, and groin and pain and numbness down his left leg to his foot. Dr. Blankenship informed Heimer that he disagreed with Dr. Cathey and believed that surgery, specifically an anterior lumbar interbody arthrodesis at the lumbosacrum, had a good chance of affording him relief. If Heimer elected to do the surgery at the L5–S1 level, Dr. Blankenship also recommended doing surgery at the L4–L5 level.

In his deposition, Dr. Cathey testified that there were different schools of thought regarding whether the surgery offered by Dr. Blankenship would alleviate any pain for a patient like Heimer, but Dr. Cathey did not believe it would. Furthermore, he testified that the proposed surgery would address preexisting degenerative operative changes in Heimer's

3

lower back, not his occupational injury. Dr. Cathey saw no objective findings of an acute injury that had taken place in May 2015 and noted that Heimer's preinjury medications indicated that he had not been doing well before May 2015.

Dr. Blankenship testified in his deposition that he examined Heimer, took x-rays, and read the report of the June 2015 MRI. Dr. Blankenship said that Heimer had indicated to him that his 2012 back surgery had addressed pain in his right leg, not his left leg; Dr. Blankenship did not have the operative note when he saw Heimer.[1] Dr. Blankenship was unaware that Heimer had seen doctors as far back as 2009 with left-leg pain complaints similar to what he presented to Dr. Blankenship. He did not know how long Heimer had been on pain medication, but he did not consider the pain medicine Heimer was taking to be an extensive amount. He said that patients who are stable and manage their pain on medication can be considered to be doing well. Dr. Blankenship said that he still would have offered the surgery if he had known these things when he evaluated Heimer.

When questioned by appellants' attorney regarding whether Heimer's condition was new or preexisting, Dr. Blankenship said that based on the new information about Heimer's prior left-leg pain, it would be difficult to state "when did it actually occur" without having the benefit of talking with the patient. Dr. Blankenship noted that there was an indication in Heimer's 2015 MRI that there had been some worsening and that he had annular fissuring, which was a tear in the lining around the disc space, but he did not have the older

---

[1]Heimer testified that he was mistaken regarding the right-leg pain.

MRI to compare it to. Dr. Blankenship said that with the newer information, it was difficult to state whether the annular fissuring was related to the incident. He said that the fact that Heimer was not pain free before the injury did not preclude the fact that his injury may be the reason he needed treatment, but it clouded the issue significantly to the point he could not say one way or the other.

Under examination by Heimer's attorney, Dr. Blankenship agreed that the June 2015 MRI showed an annular tear, which could have been caused by trauma, and that the radiologist who read the MRI opined that Heimer's moderate bilateral neural foraminal narrowing had worsened. Heimer's attorney then asked Dr. Blankenship for a conclusion about the May 2015 injury based on the history of Heimer's returning to work after recovering from his 2012 surgery and doing heavy lifting from 50 to 120 pounds on occasion. Dr. Blankenship stated that

> there's not much doubt in my mind that the gentleman's need for further treatment occurred as a result of that injury because, as Dr. Ceola had indicated, he was doing well after surgery.

The administrative law judge (ALJ) found that Heimer had proved by a preponderance of the evidence that he was entitled to the surgery by Dr. Blankenship. The decision of the ALJ, which was affirmed and adopted by the Commission, provided that

> the claimant clearly had a previous low back and neck surgery while working for the same respondent/employer and clearly had chronic degenerative disc disease along with facet joint arthritis. We also have two well respected surgeons with a difference of opinion in regard to the treatment options, or the lack of them. It is troubling that the claimant apparently failed to provide Doctor Blankenship with information that he had been suffering from left leg pain. I find that the statement by Doctor

SLIP OPINION

Blankenship that the latest MRI showing annular fissuring, which is a tear in the lining around the disc space, is controlling. Although it is difficult to determine how long the injury was present, it does not apparently appear on the older MRIs. . . . That based upon the objective finding in the MRI of annular fissuring, I find that the claimant has satisfied his burden of proof and the claimant is entitled to additional medical care as prescribed by Doctor Blankenship.

Our standard of review in workers'-compensation cases is well settled. We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm the decision if it is supported by substantial evidence. *Heritage Baptist Temple v. Robison*, 82 Ark. App. 460, 120 S.W.3d 150 (2003). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Id*. We defer to the Commission's findings on what testimony it deems to be credible, and the resolution of conflicting evidence is a question of fact for the Commission. *Univ. of Ark. Pub. Emp. Claims Div. v. Tocci*, 2015 Ark. App. 505, 471 S.W.3d 218. The Commission has authority to accept or reject medical opinion and to determine its medical soundness and probative force. *Id*.

Arkansas Code Annotated section 11-9-508(a) (Supp. 2017) requires an employer to promptly provide for an injured employee such medical treatment "as may be reasonably necessary in connection with the injury received by the employee." Reasonably necessary medical treatment may include that which is necessary to accurately diagnose the nature and

6

SLIP OPINION

extent of a compensable injury, to reduce or alleviate symptoms resulting from a compensable injury, to maintain the level of healing achieved, or to prevent further deterioration from the damage produced by the compensable injury. *Hopkins v. Harness Roofing, Inc.*, 2015 Ark. App. 62, 454 S.W.3d 751. The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Owens Planting Co. v. Graham*, 102 Ark. App. 299, 284 S.W.3d 537 (2008).

Because an employer takes an employee as it finds him, employment circumstances that aggravate preexisting conditions are compensable. *Ozark Natural Food v. Pierson*, 2012 Ark. App. 133, 389 S.W.3d 105. Thus, an aggravation of a preexisting noncompensable condition by a compensable injury is, itself, compensable; however, the aggravation, being a new injury with an independent cause, must meet all of the requirements for a compensable injury. *Id*. A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D). "Objective findings" are those findings that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16). An employee is not required to prove that his or her compensable injury is the major cause for the need for treatment unless the employee is seeking permanent benefits; when the employee has suffered a specific injury and is seeking only medical benefits and temporary total disability, the major-cause analysis is not applicable, and the employee need show only that the compensable injury was a factor in the need for additional medical treatment. *Jackson v. O'Reilly Auto. Inc.*, 2013 Ark. App. 755.

7

SLIP OPINION

Appellants contend that Heimer's injury was not established by medical evidence supported by objective findings because there was no proof that the annular tear was caused by the injury or resulted in the need for treatment. They also argue that Dr. Cathey's opinion was more credible than Dr. Blankenship's opinion because Dr. Cathey reviewed Heimer's MRI images, not just the report, and Dr. Blankenship was given an incorrect history by Heimer. Appellants argue that Dr. Blankenship was misled about Heimer's prior left-leg complaints, his prior surgery, and his recovery therefrom, and when presented with these facts at his deposition, Dr. Blankenship could not say one way or the other whether the problems he was treating were related to Heimer's 2015 injury.

In finding that Heimer proved entitlement to additional medical treatment, both the ALJ and the Commission noted the changes in Heimer's MRIs and credited Dr. Blankenship's opinion after acknowledging the information of which he had been unaware until his deposition. As appellants note, the doctor who read Heimer's June 2015 MRI compared it with an MRI taken in 2012. The 2015 MRI report stated that with regard to the L5–S1 level, "moderate disc bulge with annular tear is identified. This appears slightly enlarged when compared to prior exam." As noted by the ALJ, the report of Heimer's previous MRI did not identify an annular tear. With regard to the L4–L5 level, the report noted "progressed moderate disc bulge with moderate facet hypertrophy and ligamentum flavum thickening. This causes mild canal stenosis and moderate bilateral neuroforaminal narrowing which has worsened when compared to prior exam."

Although Dr. Blankenship initially equivocated upon being informed that Heimer's prior back surgery addressed left-leg pain, after being informed about Heimer's recovery and return to work, Dr. Blankenship ultimately concluded that there was "not much doubt" in his mind that Heimer's need for further treatment occurred as a result of the May 2015 injury. An employee need show only that the compensable injury was a factor in the need for additional medical treatment. *Jackson*, 2013 Ark. App. 755; *see also Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 303, 40 S.W.3d 760, 765 (2001) ("[I]f the doctor renders an opinion about causation with language that goes beyond possibilities and establishes that work was the reasonable cause of the injury, this should pass muster."). Although Dr. Cathey opined that the proposed surgery was not related to the work injury and would not alleviate Heimer's pain, he acknowledged that Dr. Blankenship subscribed to a different school of thought regarding whether this surgery would benefit Heimer's condition. It was the Commission's duty to resolve the conflicting medical evidence, to weigh that evidence, and to determine which opinions were credible. *Adams v. Bemis Co.*, 2010 Ark. App. 859. Viewing the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, we hold that substantial evidence supports the Commission's decision.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.

*Frye Law Firm, P.A.*, by: *William C. Frye*, for appellants.

*Tolley & Brooks, P.A.*, by: *Evelyn E. Brooks*, for appellee.