Cite as 2020 Ark. App. 80

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CV-19-562

| | |
|---|---|
| DAVID EVANS | **Opinion Delivered:** February 5, 2020 |
| APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| V. | |
| FIRESTONE BUILDING PRODUCTS, LTD., AND SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. | [NO. G5707421] |
| APPELLEES | AFFIRMED |

**MEREDITH B. SWITZER, Judge**

This is a workers'-compensation case. David Evans filed a claim for workers'-compensation benefits following an injury he sustained on March 18, 2017. He was fifty-four years old and had worked for Firestone Building Products for approximately two years. Evans suffered a noncontroverted, compensable injury to his left thumb. He also claimed that he injured his whole left hand and wrist and asserted entitlement to a 21 percent impairment rating to his body as a whole. Firestone contested the whole-hand/wrist and permanent-impairment claims. Following a hearing, the administrative law judge (ALJ) denied his claim for additional benefits, concluding that he did not meet his burden of proving injury to the whole left hand or permanent physical impairment. Evans appealed to the Arkansas Workers' Compensation Commission, which affirmed and adopted the ALJ's opinion. As his sole point on appeal to this court, he contends the Commission's decision is not supported by substantial evidence. We affirm.

When the Commission adopts the ALJ's opinion, it makes the ALJ's findings and conclusions its findings and conclusions. *White v. Butterball, LLC*, 2018 Ark. App. 7, 538 S.W.3d 240. We consider both the ALJ's opinion and the Commission's majority opinion. *Id.* When the Commission denies benefits because a claimant has failed to meet his or her burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Id.* We view the evidence in the light most favorable to the Commission's decision and affirm if it is supported by substantial evidence, which is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue on review is not whether the evidence would have supported a contrary finding or whether we might have reached a different result; we affirm if reasonable minds could reach the Commission's conclusion. *Id.* We defer to the Commission on issues involving credibility and the weight of the evidence. *Id.*

Here, the work incident resulting in Evans's claims occurred when he was trying to open a safety latch that was stuck on a twenty-foot container. The handle "shot out" and hit his left palm. Evans described the impact area as starting from his wrist area all the way up through the center of his palm and out through the webbing of his left hand. He said the force of the blow put him on his knees in pain. Although initial x-rays did not reveal a fracture, a subsequent MRI report listed the following impressions: (1) "Suspected small, nondisplaced acute fracture at the base of the proximal phalanx of the thumb at the ulnar collateral ligament insertion. UCL remains intact"; and (2) "[c]ystic changes of the scaphoid bone likely reflecting sequela of prior injury or degenerative changes. No acute scaphoid fracture identified." As mentioned at the outset, Firestone treated the "thumb injury" as compensable. Evans was placed in a cast, received physical therapy, and was provided with

2

light-duty work until he reached maximum medical improvement (MMI). However, Evans also claimed there was a broader area of injury to his entire left hand, which resulted in a 35 percent left-upper-extremity impairment, which converted to a 21 percent impairment to his body as a whole. Firestone controverted the whole-hand and permanent-impairment claims.

Evans was first seen at a local hospital. He then saw Dr. Thomas Fox, who was not only the "company doctor" but also his personal physician. Dr. Fox referred Evans to Dr. Harold Weems, a hand specialist who treated his thumb injury with a cast and physical therapy but also noted what he described as Evans's exaggerated symptoms, e.g, "histrionic complaints of pain with every bit of motion in the thumb." He concluded Evans reached MMI on May 10, 2017, and released him to full work duty.

Evans then sought and was granted a change-of-physician request to Dr. Michelle Ritter, an orthopedic hand surgeon. Dr. Ritter ordered physical therapy, determined surgery would not be helpful, and concluded Evans reached MMI on April 12, 2018. She also referred Evans to Dr. Clinton McAlister for a permanent-impairment rating.

Dr. McAlister conducted an evaluation of Evans, which included a range-of-motion test. He assigned Evans a 35 percent left-upper-extremity impairment, which then converted to a 21 percent permanent-impairment rating to his body as a whole. From Evans's description of Dr. McAlister's range-of-motion examination, the ALJ determined it was an active, rather than passive, range-of-motion test. The ALJ's conclusion is also supported by Dr. McAlister's written report, which provided in part: "Unless otherwise specified, a minimum of three consecutive *AROM* measurements were obtained and the greatest measurement was used for comparison to AMA norms. Any *AROM* or strength

3

measurements determined to be invalid due to inconsistent or poor effort on the part of the patient was noted by the examiner." (Emphasis added.)

Finally, although he did not personally examine Evans, Dr. Owen Kelly reviewed Evans's x-rays, MRI, and other medical records and assigned him a zero percent permanent-impairment rating. Dr. Kelly opined:

> I have reviewed the provided medical records in detail including treatment by Dr. Weems and Dr. Ritter. I also reviewed the Functional Capacity Evaluation, and the computation that it took to calculate the 35% impairment rating of the left upper extremity. It is in my opinion that the work injury of 3/18/17 would have given Mr. Evans a 0% impairment. He sustained a mild sprain and a non-displaced fracture. The findings the rating was based on are not related to this particular trauma. The motion restrictions were pre-existing and related to arthritic disease and not to an isolated injury to the hand on 3/18/17. There is thorough documentation of pre-existing disease.

In addition to medical evidence, the ALJ also heard testimony from Keith Williams, the health and safety manager at Firestone. He testified that his job includes case management and care of on-the-job injuries, that he attended several medical appointments with Evans, and that Evans told him on a visit to see Dr. Weems that he had once broken his left hand when he hit a guy in a bar fight. Evans denied having broken his left hand, stating instead that he had told Williams he broke his pinky finger on his right hand in a fight when he was eighteen or nineteen years old. Evans also acknowledged that he had a personality conflict with his physical therapist and that the physical therapist had reported observing him able to do a complete opposition (touching thumb with fingers) "when unaware of being observed."

As the claimant, Evans had the burden of proving the compensability of the broader injury he claimed. *White*, *supra*. To prove a compensable injury as a result of a specific incident that is identifiable by time and place of occurrence, the claimant must establish by

4

a preponderance of the evidence (1) an injury arising out of and in the course of employment; (2) that the injury caused internal or external harm to the body that required medical services or resulted in disability or death; (3) medical evidence supported by objective findings, as defined by Arkansas Code Annotated section 11-9-102(16) (Repl. 2012), establishing the injury; and (4) that the injury was caused by a specific incident identifiable by time and place of occurrence. *Id.* Objective findings are those that cannot come within the claimant's voluntary control. Ark. Code Ann. § 11-9-102(16); *Greene Cty. Judge v. Penny*, 2019 Ark. App. 552, 589 S.W.3d 478. In workers'-compensation law, an employer takes the employee as it finds them, and employment circumstances that aggravate preexisting conditions are compensable. *White*, *supra*. An aggravation of a preexisting, noncompensable condition by a compensable injury is, itself, compensable. *Id.* An aggravation is a new injury resulting from an independent incident. *Id.* An aggravation, being a new injury with an independent cause, must meet the definition of a compensable injury in order to establish compensability for the aggravation. *Id.* Complaints of pain may not be considered. *Multi-Craft Contractors v. Yousey*, 2018 Ark. 107, 542 S.W.3d 155. The Commission has the authority to accept or reject a medical opinion and the authority to determine its probative value. *Hines v. Cent. Ark. Transit Auth.*, 2019 Ark. App. 553, 590 S.W.3d 750. We are without power to reweigh the evidence or to make credibility determinations. *Id.*

A permanent impairment is any functional or anatomical loss remaining after the employee's healing period has ended, and it must be supported by objective and measurable findings. *Wayne Smith Trucking, Inc. v. McWilliams*, 2011 Ark. App. 414, 384 S.W.3d 561. Again, objective findings are those that cannot come under the claimant's voluntary control,

5

and when permanent benefits are sought, the compensable injury must be established as the major cause of the disability or impairment. *Wright Steele & Machine, Inc. v. Heimer*, 2017 Ark. App. 643, 535 S.W.3d 311. Active range-of-motion tests are subjective in nature because they are entirely within the claimant's voluntary control. *Emergency Ambulance Servs. v. Pritchard*, 2016 Ark. App. 366, 498 S.W.3d 774. On the other hand, passive range-of-motion tests are conducted by the examiner and may constitute objective evidence. *Id.*

Here, the ALJ concluded in part:

> The evidence before me does not demonstrate that the claimant sustained an injury to his left hand which arose out of and in the course of his employment duties during the March 18, 2017 event. The record does not demonstrate a traumatic injury to the claimant's hand during the accidental injury of March 18, 2017. Here, the record demonstrates the injury was limited to the claimant's thumb. Specifically, the claimant failed to establish a hand injury by medical evidence supported by objective findings. I realize the claimant may have initially suffered some consequential swelling to the hand as a result of the thumb injury; however, the record demonstrates this resolved with the healing of the fracture. Hence, there is no indication by way of any diagnostic studies or otherwise of any structural damage to the claimant's left hand.

The ALJ recounted the medical evidence and Evans's complaints of pain, specifically finding that Evans was not a credible witness and also specifically crediting Keith Williams's testimony over Evans's concerning a prior break to his left hand. The ALJ noted that during the hearing Evans removed his elastic brace, and she observed very slight swelling to his hand. She further noted, however, that even the slight swelling was likely caused by the elastic brace fitting very tightly on his hand. The ALJ further concluded that Evans had failed to establish a permanent physical impairment supported by objective and measurable findings:

> The claimant has been working full duty since his release in 2017. He has given inconsistent testimony as to how Dr. McAlister administered the measurements for his rating. Based on the claimant's inconsistent testimony, I am persuaded active

6

range of motion was utilized in assessing the claimant's deficits, which is subjective in nature.

Therefore, minimal weight has been afforded to Dr. McAlister's medical opinion in addressing this issue. Specifically, I find that Dr. McAlister's rating is invalid since it was assessed for the entire hand and because the part pertaining to the thumb was based on pre-existing degenerative abnormalities. Accordingly, I am unable to find that the major-cause requirement for the claimant's degenerative condition has been satisfied as set forth in *Leach v. Cooper Tire & Rubber Co.*, 2011 Ark. App. 571.

The ALJ's decision displays a substantial basis for the denial of Evans's claims. The ALJ made a specific finding that Evans lacked credibility, and aside from the MRI, which supported the compensated injury to Evans's thumb, the ALJ weighed the medical evidence and concluded there were no other objective medical findings of injuries to the left hand attributable to the work injury and no reports of impairment aside from an *active* range-of-motion evaluation, to which she gave little weight. Even Evans's assertion that the ALJ acknowledged some swelling in his left hand at the time of the hearing was undercut by the full context of the ALJ's comments, which found only slight swelling and attributed it to the effects of wearing an elastic hand brace. Fair-minded persons with the same facts before them could reach the Commission's conclusions.

Affirmed.

VIRDEN and BROWN, JJ., agree.

*Moore, Giles & Matteson, L.L.P.*, by: *Greg Giles*, for appellant.

*Barber Law Firm PLLC*, by: *Gail Ponder Gaines*, for appellees.