Cite as 2020 Ark. App. 226

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-19-859

| | |
|---|---|
| USA TRUCK, INC., AND BROADSPIRE SERVICES, INC. <br> APPELLANTS <br><br> V. <br><br> DUANE WEBSTER <br> APPELLEE | **Opinion Delivered:** April 15, 2020 <br><br> APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION <br> [NO. G805756] <br><br><br> AFFIRMED IN PART; REMANDED IN PART |

### RITA W. GRUBER, Chief Judge

USA Truck, Inc., and Broadspire Services, Inc., appeal from a decision of the Arkansas Workers' Compensation Commission (the "Commission") finding that appellee Duane Webster proved he sustained a compensable injury to his cervical spine and that USA Truck[1] was liable for the payment of all reasonable and necessary medical treatment. USA Truck contends that the Commission erred in finding that a recommended cervical fusion was reasonably necessary to treat Webster's injury by relying on a medical opinion without discussing or weighing other contradictory medical evidence that determined the condition was caused by degenerative disc disease. We affirm in part and remand for further findings.

At the time of his injury, Webster was fifty-three years old and had worked as an over-the-road truck driver for USA Truck since May 2014. His job required him to ensure

---

[1]Appellants will be referred to herein as USA Truck.

that the weight on the trailer and truck was equally distributed, which he accomplished by sliding the trailer wheels either forward or backward. Webster testified that around 5:30 p.m. on Friday, August 3, 2018, while in the middle of a twelve-day run, he was attempting to distribute the weight, and as he was pulling on the tandem-release bar, he gave it "a good yank" and felt "a sting" in his neck and arm. He did not report it to USA Truck at the time because he did not think it was anything severe, and there was no one available to take the report.

Webster testified that his condition progressively worsened over the weekend, and on Monday morning, he mentioned it to his dispatcher, who asked him if he could "work through it." Webster said he would try to do so and finished his run, working another ten days. When he completed his run and returned home, he discussed his condition with USA Truck's workers' compensation department and was sent for evaluation.

On August 16, 2018, Dr. Janan Lane at Northwest Health Occupational Medicine diagnosed Webster with radiculopathy of the cervical region, strain of the muscle and tendon at neck level, and secondary kyphosis of the cervical region. She prescribed medication and stretching exercises, and she placed him on restricted duties. On September 4, Webster was examined by Dr. Konstantin Berestnev at Arkansas Occupational Health Clinic. An x-ray taken that day showed no acute findings but identified degenerative changes to the vertebrae in his neck. Dr. Berestnev diagnosed Webster with a sprain of ligaments of his cervical spine and treated him with an injection, medication, and physical therapy and continued Webster on restricted duty of no driving.

A cervical MRI was performed on October 18, which revealed a straightening of the

normal lordotic curvature of the cervical spine, degenerative changes of the cervical spine, and mild to moderate central canal stenosis at C5/C6 and C6/C7. Webster returned to Dr. Berestnev on October 22, complaining that his neck and right arm were still in pain and that the MRI had made his condition worse. Dr. Berestnev reviewed the MRI results and opined that Webster suffered from degenerative joint disease of the cervical spine and that the condition was not work related. He prescribed prednisone and referred him to his primary-care physician, Dr. Patrick McGowan.

Medical records from Dr. McGowan indicate that he had treated Webster in 2015 for pain in his "right shoulder that radiates to his neck." Webster had not returned thereafter until Dr. McGowan examined him on October 26, 2018. At that time, Dr. McGowan discovered a knot upon palpation in the musculature area of his right neck. He gave him a trigger-point injection in the area of the knot and referred him to Dr. Larry Armstrong, a neurosurgeon, for further evaluation. Dr. Armstrong diagnosed Webster with cervical stenosis of the spine, cervical spinal-cord compression, and degeneration of the cervical disc. Due to the narrowing in Webster's spinal cord and spinal canal, Dr. Armstrong recommended surgery.

On April 23, 2019, at USA Truck's counsel's request, radiologist Dr. Theodore Hronas reviewed Webster's MRI and opined that there were "no objective findings of an acute injury as the result of the accidental work-related injury." Dr. Hronas never met with, examined, or treated Webster.

On May 1, 2019, an administrative law judge (ALJ) held a hearing on Webster's claim. The ALJ found that Webster had met his burden of proof with respect to a

3

compensable cervical spine injury and that, to the extent he had a preexisting degenerative condition, it was aggravated by the incident on August 3, 2018. The ALJ found that USA Truck was liable for payment of "all reasonable and necessary treatment in connection with claimant's compensable cervical spine injury," specifically including the medical treatment provided by Drs. McGowan, Berestnev, and Armstrong. The Commission affirmed and adopted the ALJ's opinion. When the Commission affirms and adopts the ALJ's opinion, thereby making the findings and conclusions of the ALJ the Commission's findings and conclusions, we consider both the ALJ's opinion and the Commission's opinion in our review. *Emergency Ambulance Serv., Inc. v. Burnett*, 2015 Ark. App. 288, at 2, 462 S.W.3d 369, 371.

This court views the evidence and all reasonable inferences in the light most favorable to the Commission's findings and affirms if supported by substantial evidence. *Pyle v. Woodfield, Inc.*, 2009 Ark. App. 251, 306 S.W.3d 455. Substantial evidence is that which a reasonable mind might find as adequate to support a conclusion. *Id.* The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; rather, it is whether there is substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact. *Burris v. L & B Moving Storage*, 83 Ark. App. 290, 123 S.W.3d 123 (2003). Credibility questions and the weight to be given to witness testimony are within the Commission's exclusive province. *Pack v. Little Rock Convention Ctr.*, 2013 Ark. 186, 427 S.W.3d 586.

It is also within the Commission's province to weigh all the medical evidence, to determine what is most credible, and to determine its medical soundness and probative

4

force. *Minn. Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999); *LVL, Inc. v. Ragsdale*, 2011 Ark. App. 144, at 7, 381 S.W.3d 869, 873. We have long held that the Commission's decision to accept or reject medical opinions and how it resolves conflicting medical evidence has the force and effect of a jury verdict. *St. Edward Mercy Med. Ctr. v. Chrisman*, 2012 Ark. App. 475, 422 S.W.3d 171. In weighing the evidence, the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Tempworks Mgmt. Servs., Inc. v. Jaynes*, 2020 Ark. App. 70, at 3, 593 S.W.3d 519, 522. But when the Commission chooses to accept the testimony of one physician over that of another, the appellate court is powerless to reverse the decision. *Hernandez v. Wal-Mart Assocs., Inc.*, 2009 Ark. App. 531, at 3, 337 S.W.3d 531, 532 (citing *Ark. Wood Prods. v. Atchley*, 21 Ark. App. 138, 729 S.W.2d 428 (1987) (rejecting an argument that the opinions of three orthopedic specialists should be given greater consideration than that of the family physician and explaining that the matter involved the weight and probative force of the evidence rather than its substantiality)).

USA Truck contends that the Commission erred in finding that the cervical fusion recommended by Dr. Armstrong was reasonably necessary in connection with Webster's work-related injury and that the Commission improperly relied on Dr. Armstrong's opinion without discussing or weighing other contradictory medical evidence that Webster's condition was caused by degenerative disc disease.

The ALJ set forth a detailed factual summary of Webster's medical treatment after the injury including Dr. Berestnev's opinion that Webster's condition was degenerative and

not work related. The ALJ then made the following pertinent findings, after weighing the contradictory medical evidence:

> Here, claimant testified that he had not had any treatment or problems with either his neck or shoulder prior to this incident in August 2018. However, a medical report from Dr. McGowan dated May 1, 2015 does indicate that claimant was seen with complaints of right shoulder and neck pain. Dr. McGowan's medical report of that date also indicates that he prescribed claimant Flexeril for spasm and Meloxicam. However, there is no indication that claimant received any other medical treatment for either his neck or right shoulder between May 1, 2015 and August 3, 2018. Furthermore, I note that the MRI scan does reveal that claimant suffered from pre-existing degenerative disc disease. However, a pre-existing disease or infirmity does not disqualify a claim if the employment aggravated, accelerated, or combined with the disease or infirmity to produce a disability for which compensation is sought. *Nashville Livestock Commission v. Cox*, 302 Ark. 69, 787 S.W.2d 664 (1990); *St. Vincent Medical Center v. Brown*, 53 Ark. App. 30, 917 S.W.2d 550 (1996). In other words, the employer takes the employee as it finds him. *Conway Convalescence Center v. Murphree*, 266 Ark. 985, 588 S.W.2d 462 (Ark. App. 1979). The test is not whether the injury causes the condition, but rather the test is whether the injury aggravates, accelerates, or combines with the pre-existing condition.

> After reviewing the evidence in this case, I find that claimant has met his burden of proof with respect to a compensable cervical spine injury.

> First, I find that claimant has met his burden of proving by a preponderance of the evidence that the injury arose out of and in the course of his employment and that it was caused by a specific incident, identifiable by time and place of occurrence. Here, claimant testified that he developed pain in his cervical spine when he yanked on a tandem release bar while attempting to equally distribute the weight of his load on August 3, 2018. Claimant consistently gave a history of injury to his treating physicians regarding this incident. I do acknowledge that claimant did not immediately report the injury using his PeopleNetsystem, but instead waited until Monday when he mentioned it to his dispatcher. After having had the opportunity to observe the claimant and his demeanor at the hearing, I find claimant to be a credible witness. I also find credible claimant's explanation that he did not believe his condition was serious immediately after the incident as evidenced by the fact that even after claimant admittedly reported the injury, he continued to work for another ten days.

> In short, I find that claimant has met his burden of proving that the injury arose out of and in the course of his employment and that it was caused by a specific incident identifiable by time and place of occurrence.

6

I also find that the injury caused internal or external physical harm to claimant's body which required medical services and that he has offered medical evidence supported by objective findings establishing an injury. While the MRI scan revealed pre-existing degenerative conditions as opposed to an acute injury, I also note that there are other objective findings establishing that the August 3, 2018 injury aggravated, accelerated, or combined with the pre-existing condition. As previously noted, the cervical MRI scan revealed a straightening of the normal lordotic curvature of claimant's cervical spine. This is recognized as an objective finding. Likewise, Dr. McGowan during his physical examination of the claimant's neck on October 26, 2018 palpitated a knot in the claimant's right neck area. This also constitutes an objective finding.

Finally, with respect to this issue, I note that Dr. Armstrong authored a report dated April 22, 2019 stating that in his opinion the claimant's condition was the result of the August 3, 2018 incident.

It is my opinion within a reasonable degree of medical certainty that Mr. Webster is in need of additional medical treatment regarding his cervical spine and that the need for treatment is due to the effects of the incident that he described as having occurred at work when he was pulling on a retention pin or bar trying to get it to move.

Accordingly, based upon the foregoing, I find that claimant's injury caused internal physical harm to his body which required medical services and that he has offered medical evidence supported by objective findings establishing an injury.

In summary, I find that claimant has met his burden of proving by a preponderance of the evidence that he suffered a compensable injury to his cervical spine on August 3, 2018. To the extent that claimant had a pre-existing degenerative condition in his cervical spine, I find that that pre-existing condition was aggravated by the incident of August 3, 2018.

Respondent is liable for payment of all reasonable and necessary medical treatment provided in connection with claimant's right shoulder and arm which is causally related to his cervical spine injury. As of the date of the hearing, this includes medical treatment provided by Dr. McGowan, Dr. Berestnev, and Dr. Armstrong.

As the ALJ noted, Webster bore the burden of proving by a preponderance of the evidence that his injury arose out of and in the course of his employment; that the injury caused harm to the body that required medical services; that medical evidence supported by objective findings, as defined in Ark. Code Ann. § 11-9-102(16), established the injury; and

that the injury was caused by a specific incident identifiable by time and place of occurrence. *Odd Jobs & More v. Reid*, 2011 Ark. App. 450, at 4–5, 384 S.W.3d 630, 632. In this case, the Commission also found that Webster demonstrated by a preponderance of the evidence that the medical treatment recommended by Dr. Armstrong was reasonably necessary in connection with his injury. *See Nucor Yamato Steel Co. v. Kennedy*, 2017 Ark. App. 126, at 6, 513 S.W.3d 895, 899. It is this finding that USA Truck disputes.

After reviewing the evidence and the Commission's opinion, we hold that the Commission's finding that Webster's injury is compensable is supported by substantial evidence and affirm its finding. We also affirm its finding that USA Truck is liable for payment of all reasonable and necessary medical treatment provided in connection with the injury. We stop short, however, of holding that the spinal surgery recommended by Dr. Armstrong is reasonable and necessary treatment for Webster's work-related injury.

Arkansas Code Annotated section 11-9-508(a) (Supp. 2019) requires an employer to promptly provide for an injured employee such medical and surgical treatment "as may be reasonably necessary in connection with the injury received by the employee." Reasonably necessary medical treatment may include that which is necessary to accurately diagnose the nature and extent of a compensable injury, to reduce or alleviate symptoms resulting from a compensable injury, to maintain the level of healing achieved, or to prevent further deterioration from the damage produced by the compensable injury. *Wright Steel & Mach., Inc. v. Heimer*, 2017 Ark. App. 643, at 6–7, 535 S.W.3d 311, 315. What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty

to use its expertise to determine the soundness of medical evidence and to translate it into findings of fact. *Hamilton v. Gregory Trucking*, 90 Ark. App. 248, 205 S.W.3d 181 (2005).

Finally, an employer takes the employee as it finds him, and employment circumstances that aggravate noncompensable preexisting conditions are compensable. *Wright Steel & Mach., Inc.*, 2017 Ark. App. 643, at 7, 535 S.W.3d at 315; *Firestone Bldg. Prods. v. Hopson*, 2013 Ark. App. 618, at 2, 430 S.W.3d 162, 164. While we recognize that the Commission stated that Webster's injury "aggravated, accelerated, or combined with" a preexisting condition, it did not explain what that condition was or make a specific finding that the spinal fusion surgery, a treatment to remedy spinal stenosis and spinal compression, was reasonably necessary to treat a condition caused or aggravated by the workplace injury. We also note that Dr. Armstrong did not specifically opine that surgery was reasonably necessary medical treatment for Webster's workplace injury or that the injury aggravated a preexisting condition thereby necessitating surgery. Dr. Armstrong opined merely that Webster needed "additional medical treatment regarding his cervical spine" due to the workplace injury. Accordingly, we remand to the Commission to make additional findings regarding whether the spinal surgery was reasonably necessary treatment for the workplace injury.

Affirmed in part; remanded in part.

SWITZER and HIXSON, JJ., agree.

*Ledbetter, Cogbill, Arnold & Harrison, LLP*, by: *R. Scott Zuerker* and *Victor L. Crowell*, for appellants.

*Walker & Harp, PLLC*, by: *Eddie H. Walker, Jr.*, for appellee.

9