Cite as 2025 Ark. App. 39

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-24-296

|  |  |
|---|---|
| ARKANSAS DEPARTMENT OF TRANSPORTATION AND ARKANSAS PUBLIC EMPLOYEE CLAIMS DIVISION<br>  APPELLANTS/CROSS-APPELLEES<br><br>V.<br><br>TRAVIS EVANS<br>  APPELLEE/CROSS-APPELLANT | Opinion Delivered January 29, 2025<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. H106980]<br><br><br>AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

## ROBERT J. GLADWIN, Judge

Appellant Arkansas Department of Transportation ("ARDOT") appeals the decision of the Arkansas Workers' Compensation Commission (the "Commission") finding that appellee/cross-appellant Travis Evans ("Evans") met his burden of proving by a preponderance of the evidence that he suffered a compensable injury to his spine on August 18, 2021, and that Evans is entitled to temporary total-disability (TTD) benefits beginning on October 12, 2022, through March 27, 2023. Evans cross-appeals from the Commission's decision that he failed to prove by a preponderance of the evidence that he suffered a compensable injury to his pelvis or left hip on August 18, 2021, or that those are compensable consequences of his left leg injury. We affirm.

I. *Background Facts*

Evans worked for the ARDOT, and on August 18, 2021, he suffered an admittedly compensable injury to his left lower extremity. Evans testified that on August 18, he was in the process of delivering a piece of equipment when his truck died. As he was getting out of his truck, he put his foot on the bottom step and slipped, causing his leg to hit the ground. He stated:

> I tore the hamstring somewhere up in my hip. It feels like maybe about the center of my backside. It hurts all the way from my belt loop down into the back of my knee and then over to the side of my knee.

After the injury, Evans was seen by Dr. Christopher Bell in the emergency room and was diagnosed with a left hamstring strain. Thereafter, Evans has been primarily treated by Dr. Bryan Smith, an orthopedist at Mercy in Fort Smith. Dr. Smith performed his initial evaluation of Evans on August 23 and diagnosed him with a left hamstring injury and noted he was concerned that Evans had torn his hamstring. Accordingly, Dr. Smith recommended that Evans undergo an MRI scan of his femur "to include the proximal aspect, all the way up to the hamstring origin, all the way down to the level of the knee." Evans underwent the MRI on August 25, and according to Dr. Smith's August 26 report, the MRI scan was consistent with a complete tear of the biceps femoris tendon. Dr. Smith further indicated that his plan was to treat Evans nonoperatively with activity limitations, physical therapy, and anti-inflammatory medication.

On September 9, 2021, Evans returned to Dr. Smith, and the doctor noted that Evans was having increased anterior knee pain at the level of the patellar tendon. Dr. Smith

prescribed muscle relaxers and recommended physical therapy and a hinged knee brace. When Evans was seen by Dr. Smith on October 7, he had been undergoing physical therapy for almost a month but was still experiencing issues with his knee. As a result, Dr. Smith recommended and performed a knee injection for the purpose of relieving pain and to determine whether there was any intra-articular involvement, such as a potential meniscus tear. Evans returned to Dr. Smith on November 2 and reported that the knee injection helped with pain and popping in his left knee; however, Evans continued to have pain. Dr. Smith ordered an MRI scan of Evans's femur and left knee. The MRI was performed on November 19, and the results showed that Evans's left knee was negative for any internal derangement, such as meniscus tears. Furthermore, Dr. Smith noted, "I think what he is dealing with now is more chondromalacia of the patella as well as some patellar maltracking secondary to weakness in the quadriceps."

Evans returned to see Dr. Smith on January 4, 2022, and Dr. Smith noted that Evans had returned to work since the time of his last visit. Evans indicated that when he was standing or walking on even surfaces, he did not have any issues, but when he was on hills or rough terrain, he had complaints. Dr. Smith stated:

> It is possible that some of this is related to patellar tracking issues that may have been present before and now are exacerbated as he has to compensate for recovering hamstring injury.

Evans saw Dr. Smith again on February 1, and Dr. Smith noted that Evans continued to have problems with standing for extended periods of time and that he felt like he was "hanging his left toes" and catching them. At this point, Dr. Smith noted that given Evans's

3

limitations, he was concerned his pain was more indicative of radiculopathy because he had failed to make substantial improvement with treatments directed at the hamstring and the knee. Dr. Smith ordered an EMG/nerve conduction study of Evans's left lower extremity to rule out radiculopathy. The EMG was performed on February 17 and came back as normal. Thereafter, Evans returned to Dr. Smith, who noted that there was nothing he could do from a surgical standpoint but opined that Evans would best be served by having a functional capacity evaluation (FCE) and an impairment rating.

At the hearing before the administrative law judge (ALJ), there was discussion and testimony regarding the FCE. The ALJ noted, "While there was some indication on [Evans's] part that this FCE was suggested by the [ARDOT], it is clear from a review of Dr. Smith's March 3, 2022 report that he recommended the FCE." Evans did not undergo an FCE; nevertheless, the ARDOT voluntarily paid Evans permanent partial-disability (PPD) benefits for 7 percent permanent anatomical impairment to the left lower extremity.

Evans testified that after returning to work for ARDOT, he had a second incident— sometime in April 2022, he was walking up and down an embankment under a bridge when his hamstring began to hurt and "the back of my knee just felt like it opened up like there wasn't nothing holding it. It got to hurting and popping." ARDOT instructed Evans to complete additional paperwork regarding the second incident; however, Evans contends that his issues are simply a continuation of the August 18, 2021 injury.

Evans returned to see Dr. Smith on April 19. Dr. Smith noted that because Evans was having mechanical symptoms in his knee, he was concerned that there might be some

4

meniscal pathology, and he ordered a repeat MRI scan of Evans's left knee. The MRI was performed on May 4, and it showed no evidence of internal derangement. Nevertheless, Dr. Smith recommended that Evans undergo a diagnostic arthroscopic procedure. Although Evans had undergone two MRIs that were both normal, Dr. Smith noted that Evans continued to have mechanical symptoms in his left knee. The procedure was performed on May 18, 2022, and Dr. Smith noted in his operative report that Evans's postoperative diagnosis was anterior fat pad impingement, patellar chondromalacia, and medial-plica syndrome.

Subsequent reports from Dr. Smith indicate that following the surgical procedure, Evans's knee was "1000 times better" and "excellent." However, Dr. Smith noted that Evans continued to have problems in his posterior thigh and hamstrings. In his September 13, 2022 report, Dr. Smith recommended that Evans undergo an evaluation for his lumbar spine. Specifically, Dr. Smith noted, "I would like to work up his back starting with lumbar spine xrays and lumbar spine MRI." The lumbar spine MRI was performed on September 29, 2022, and the report contained the following:

1. Mild-moderate degenerative change throughout the lumbar spine.

2. Small broad-based disc protrusion eccentric to the right at L5-S1.

Following the MRI scan, Evans returned to Dr. Smith on October 11. At that time Dr. Smith again opined that Evans's problems might be related to his back:

I am somewhat concerned that all this is really more related to his back. We had a long discussion about this. I think it would be wise for us to get him set up with pain management for a trial of lumbar epidural steroid injections to assess how his left

5

lower extremity responds. With regard to left lower extremity, I do not have any further surgical interventions, but I am happy to see him through the results of his lumbar spine injections.

On November 16, 2022, Evans was evaluated by Dr. Natalie Strickland, a pain-management specialist. Dr. Strickland diagnosed Evans as suffering from lumbar radicular pain; lumbar herniated disc; spondylosis of lumbosacral region without myelopathy or radiculopathy; and chronic bilateral low back pain without sciatica. Dr. Strickland gave Evans a lumbar epidural steroid injection at the L5-S1 level.

Evans returned to Dr. Smith on December 13, 2022, and informed Dr. Smith that he had not noticed a significant difference in his day-to-day activities following the injections; however, he reported that his wife felt like he had slept better the last several nights. Dr. Smith stated:

> We thought he had his hamstring injury. I did not feel that surgical intervention was warranted. It has taken him a long time, he has been dealing with it for a year. We were concerned that this might be more of a lumbar radiculopathy type picture.

Accordingly, Dr. Smith recommended that Evans continue his follow-up treatment with the pain-management doctor and see if future injections gave him some relief.

On March 27, 2023, Evans was evaluated by Dr. William Rambo, a neurosurgeon. Dr. Rambo diagnosed Evans's condition as lumbar/lumbosacral spondylosis. Dr. Rambo did not believe Evans needed any surgical intervention but did indicate that he should undergo an epidural steroid injection at the L4-5 level. Dr. Rambo also indicated that Evans had no disability or work restrictions with respect to his lumbar spine. The final medical report from Dr. Smith is dated April 6, 2023, at which time, he recommended that Evans follow

up with the pain-management specialist for consideration of an epidural steroid injection at the L4-5 level. Subsequently, Evans returned to work for ARDOT on April 2, 2023.

Evans filed his claim with the Commission, contending that he suffered a compensable injury to his left hip, pelvis, and back as a result of the April 18, 2021 incident. Alternatively, he argued that his back complaints were a compensable consequence of his left leg injury. Evans sought payment of his related medical treatments as well as TTD benefits and controverted attorney's fees.

On March 1, 2023, the parties went before the ALJ for a hearing. ARDOT argued that Evans did not establish that he sustained a back, hip, or pelvis injury that occurred on August 18, 2021. ARDOT also argued that Evans gave no notice of having a back injury before November 16, 2022; thus, he failed to give proper notice of his back injury pursuant to Arkansas Code Annotated section 11-9-701 (Repl. 2012). The ALJ disagreed with ARDOT regarding Evans's back injury, holding that Evan met his burden of proving that he suffered a compensable injury to his lumbar spine on August 18, 2021; that he was entitled to TTD benefits from October 12, 2022, through March 27, 2023; and that Evans did not fail to give notice pursuant to Arkansas Code Annotated section 11-9-701. However, the ALJ agreed with ARDOT that Evans did not meet his burden of proving that he suffered a compensable injury to his pelvis or left hip or that those are compensable consequences of his left leg injury. On June 26, 2023, ARDOT filed its notice of appeal to the full Commission; and on July 3, Evans filed his notice of cross-appeal.

On February 12, 2024, the Commission entered its opinion and order finding that the ALJ's decision is supported by a preponderance of the credible evidence, correctly applies the law, and should be affirmed. Accordingly, the Commission adopted the ALJ's opinion in full. One member of the Commission filed a dissenting opinion, finding that Evans failed to meet his burden of proof that he sustained a compensable injury to his lumbar spine or that he was entitled to TTD benefits during the time frame awarded by the Commission. Furthermore, the dissenting commissioner found that Evans failed to give notice of his alleged lumbar injuries pursuant to statute.

ARDOT filed its timely notice of appeal on March 11, 2024; Evans filed his timely notice of cross-appeal on March 22. This appeal followed.

## II. *Standard of Review*

It is settled law that on appellate review of workers'-compensation cases, this court views the evidence and all reasonable inferences from it in the light most favorable to the Commission's findings. *Maulding v. Price's Utility Contractors, Inc.*, 2009 Ark. App. 776, 358 S.W.3d 915. A decision of the Commission is reversed only if we are convinced fair-minded persons using the same facts could not reach the conclusion reached by the Commission. *Id.* In our review, we defer to the Commission in determining the weight of the evidence and the credibility of the witnesses. *Id.* The issue is not whether we may have reached a different conclusion or whether the evidence might have supported a contrary finding. *Id.*

## III. *Points on Appeal*

ARDOT argues on appeal (1) that fair-minded persons with the same facts could not have reached the same conclusion as the Commission in finding that Evans met his burden of proving by a preponderance of the evidence that he suffered a compensable injury to his lumbar spine on August 18, 2021; (2) that the Commission erred in finding that Evans met his burden of proving by a preponderance of the evidence that he is entitled to TTD benefits as a result of the lumbar spine injury; and (3) that fair-minded persons with the same facts before them could not have reached the same conclusion as the Commission in finding that Evans did not fail to give notice of his injury pursuant to Arkansas Code Annotated section 11-9-701.

Evans argues on cross-appeal that the Commission's denial that he sustained a compensable injury to his hip and pelvis on August 18, 2021, is not supported by substantial evidence and should be reversed.

IV. *Discussion*

When an ALJ's decision is appealed to the Commission, the Commission does not sit as an appellate court to review the ALJ's findings; instead, the Commission makes a de novo determination on the facts. *Jackson v. Smiley Sawmill, LLC*, 2019 Ark. App. 235, 576 S.W.3d 43. In carrying out its duty to find the facts, the Commission is required to make findings of fact, and those findings must contain all the specific facts relevant to the issues so that the reviewing court may determine whether the Commission has resolved these issues in conformity with the law. *Stallworth v. Hayes Mech., Inc.*, 2013 Ark. App. 188.

Here, the Commission affirmed and adopted the ALJ's opinion as its own, which it is permitted to do under Arkansas law. *Marshall v. Ark. Dep't of Corr.*, 2020 Ark. App. 112, 594 S.W.3d 160. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id.* Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's opinion. *Id.*

A. Back Injury

On appeal, ARDOT contends the Commission erred by finding that Evans proved by a preponderance of the evidence that he sustained a lumbar injury on August 18, 2021. Specifically, it contends that no physician described any injury to Evans's lumbar spine—with any reasonable degree of medical certainty—that could have resulted from injuries to his left lower extremities and that Evans made no complaints of back pain. Accordingly, ARDOT argues that it would require speculation and conjecture to find that Evans injured his back on August 18, 2021. In response, Evans maintains that the ALJ's and the Commission's findings are supported by the MRI establishing the presence of abnormalities in his lumbar spine; Dr. Smith's continuing concerns that Evans's pain was back related in nature; and the fact that he was receiving lumbar spine injections.

Arkansas Code Annotated section 11-9-102(4)(A)(i) (Supp. 2023) provides that a "compensable injury" means an accidental injury causing internal or external physical harm to the body arising out of and in the course of employment and which requires medical services or results in disability or death. A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D). "Objective

findings" are those findings that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i). The employee has the burden of proving by a preponderance of the evidence that he or she sustained a compensable injury. Ark. Code Ann. § 11-9-102(4)(E)(i).

Here, the ALJ found as follows:

[T]he claimant has offered medical evidence supported by objective findings establishing a compensable injury to his back. [Evans] underwent a lumbar MRI scan on September 29, 2022, which revealed a disc protrusion at the L5-S1 level. In addition, [Evans's] treating physicians have recommended medical treatment for his lumbar spine in the form of lumbar epidural steroid injections initially at L5-S1 and most recently L4-5.

Additionally, the ALJ pointed out that when various treatments to Evans's knee and hamstring did not alleviate his symptoms, Dr. Smith stated that he was concerned that Evans's current limitations were more indicative of radiculopathy. After his second incident in April 2022, Dr. Smith performed surgery on Evans's left knee, which alleviated most of his left knee complaints; however, Evans continued to have issues with his hamstring. Thereafter, Dr. Smith recommended that Evans be evaluated for low back issues and recommended that he have an MRI, "starting with lumbar spine MRI." As documented by the ALJ, the MRI revealed degenerative changes and a disc protrusion at the L5-S1 level, and Evans began receiving epidural steroid injections at the site of the protrusion.

The ALJ also referenced the evaluation of Dr. William Rambo, a neurosurgeon, in its findings. In his report, Dr. Rambo stated:

Tough situation. He has been thoroughly evaluated and treated since his work-related injury in 2021. I think his pain is probably multifactorial including hamstring and

11

knee etiologies. Arguing against a radiculopathy is that his pain stops at the knee and his MRI findings are mild and mostly right-sided. However he does have some mild lateral recess stenosis at L4-L5. While this is not bad enough to warrant surgical intervention, it is possible that it is contributing to his clinical picture.

The ALJ concluded, "[Evans] has repeatedly informed his treating physicians that he has had pain radiating from his beltline down the back of his knee." Accordingly, the ALJ found that because Evans's "complaints have been consistent throughout his treatment and it is the opinion of his treating physician, Dr. Smith, that those complaints have a radicular component for which he has recommended medical treatment," that Evans met his burden of proving by a preponderance of the evidence that he suffered a compensable injury to his low back on August 18, 2021.

It is within the Commission's province to weigh all the medical evidence, to determine what is most credible, and to determine its medical soundness and probative force. *USA Truck, Inc. v. Webster*, 2020 Ark. App. 226, 599 S.W.3d 368. We have long held that the Commission's decision to accept or reject medical opinions and how it resolves conflicting medical evidence has the force and effect of a jury verdict. *Id.* In weighing the evidence, the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Id.* But when the Commission chooses to accept the testimony of one physician over that of another, the appellate court is powerless to reverse the decision. *Id.*

The Commission agreed with the ALJ that Evans's complaints had remained consistent throughout, and while Evans did not specifically allege back pain, his complaint had always been pain from his belt loop down to his knee. Further, the ALJ and the

12

Commission relied on the objective findings of Dr. Smith, treatment by Dr. Strickland of Evans's lumbar spine, and Dr. Rambo's evaluation wherein he opined that it was possible spinal issues were "contributing to [Evans's] clinical picture." While we acknowledge that Dr. Rambo also noted that medical evidence existed to "argu[e] against radiculopathy," namely that Evans's pain stops at his knee and that MRI findings "are mild and mostly right-sided," the weight and interpretation of medical evidence are matters for the Commission. Thus, we find that substantial evidence supports the Commission's decision that Evans proved compensable injuries to his back.

## B. TTD Benefits

Next, ARDOT asserts that Evans cannot establish total incapacity to earn wages from October 12, 2022, through March 27, 2023, for his alleged unscheduled back injury occurring on August 18, 2021. Specifically, ARDOT argues that because Evans went back to work in December of 2021, he cannot establish his inability to work while in a healing period. Thus, ARDOT maintains that the Commission's award of TTD benefits from October 12, 2022, through March 27, 2023, must be reversed.

TTD for unscheduled injuries is that period within the healing period in which a claimant suffers a total incapacity to earn wages. *Hope Sch. Dist. v. Wilson*, 2011 Ark. App. 219, 382 S.W.3d 782. The healing period is that period for healing of an accidental injury that continues until an employee is as far restored as the permanent character of his injury will permit, and the healing period ends when the underlying condition causing the disability has become stable, and nothing in the way of treatment will improve the condition. *Id.* The

determination of when the healing period has ended is a factual determination for the Commission. *Id.*

> Regarding the TTD benefits, the ALJ found as follows:
>
> [Evans] underwent surgery on his left knee by Dr. Smith on May 18, 2022. According to Dr. Smith's medical report of October 11, 2022, he was concerned at that time that [Evans's] complaints were related more to his back and recommended a trial of epidural steroid injections. Dr. Smith also stated with regard to [Evans's] left lower extremity he did not have any further surgical recommendations. Dr. Smith took [Evans] off work that day to be evaluated for pain management. [ARDOT] ceased paying [Evans] temporary total disability as of that date because it did not accept [Evans's] low back complaints as compensable. However, based upon the finding that [Evans's] low back complaints are a compensable injury, Dr. Smith's continuation of [Evans's] off work status as of October 11, 2022 and his continuation of that status in his report of December 13, 2022, indicates that [Evans] suffered a total incapacity to earn wages. Likewise, [Evans's] receipt of medical treatment in the form of epidural steroid injections establishes that [Evans] remained within his healing period. I find that [Evans's] total incapacity to earn wages continued through March 27, 2023. On that date, [Evans] was evaluated by Dr. Rambo who recommended an epidural steroid injection at the L4-5 level. However, Dr. Rambo indicated that with respect to [Evans's] lumbar spine "I cannot give him any disability or work restrictions." Evans apparently returned to work for [ARDOT] a few days after this evaluation by Dr. Rambo.

We find unpersuasive ARDOT's argument that Evans could not establish total incapacity—as a result of his back injury—to earn wages for the period that the ALJ and the Commission awarded. Dr. Smith took Evans off work on October 11, 2022, and he was not released by a physician to return to work until Dr. Rambo did so on March 27, 2023. Furthermore, the Commission's decision to award TTD benefits is supported by substantial evidence due to the fact that Evans was referred to Dr. Strickland to receive epidural steroid injections and pain management for his back; thus, he was in a healing period. Given our

14

standard of review, we affirm the Commission's decision to award TTD benefits to Evans beginning on October 11, 2022, through March 27, 2023.

C. Arkansas Code Annotated Section 11-9-701

Finally, ARDOT argues that Evans failed to give proper notice of his back injury as required by Arkansas Code Annotated section 11-9-701. Section 11-9-701 states as follows:

(a)(1) Unless an injury either renders the employee physically or mentally unable to do so, or is made known to the employer immediately after it occurs, the employee shall report the injury to the employer on a form prescribed or approved by the Workers' Compensation Commission and to a person or at a place specified by the employer, and the employer shall not be responsible for disability, medical, or other benefits prior to receipt of the employee's report of injury.

(2) All reporting procedures specified by the employer must be reasonable and shall afford each employee reasonable notice of the reporting requirements.

(3) The foregoing shall not apply when an employee requires emergency medical treatment outside the employer's normal business hours; however, in that event, the employee shall cause a report of the injury to be made to the employer on the employer's next regular business day.

(b)(1) Failure to give the notice shall not bar any claim:

(A) If the employer had knowledge of the injury or death;

(B) If the employee had no knowledge that the condition or disease arose out of and in the course of the employment; or

(C) If the commission excuses the failure on the grounds that for some satisfactory reason the notice could not be given.

Here, the ALJ and the Commission cited subdivision (b)(1)(A) and (B) and held that ARDOT was clearly aware that Evans suffered a compensable injury. Specifically, they found

There is no requirement under A.C.A. § 11-9-701 that [Evans] list every possible diagnosis which will be made during the course of his treatment. [Evans] testified

15

that he never really had any back pain and it was only his treating physicians who concluded that his complaints were related to his low back and not entirely to his hamstring. Nevertheless, [ARDOT] had knowledge of [Evans's] injury; therefore, A.C.A. § 11-9-701 is not applicable.

ARDOT maintains that the Commission erred in finding section 11-9-701 inapplicable and argues that it cannot be liable for benefits to Evans before it was notified of the alleged back injury. However, ARDOT cites no case law in support of this argument, and we do not consider arguments that are not supported by convincing argument or citation to authority. This court will also not make appellants' arguments for them. *Sanders v. JLP, LLC*, 2024 Ark. App. 65, at 6, 683 S.W.3d 607, 611. The Commission held that Evans's immediate notice of his August 18, 2021 injury was sufficient and that the statute does not require a claimant to list every possible diagnosis that might stem from a work-related injury—just the injury itself. Accordingly, we hold that substantial evidence supports the ALJ's and the Commission's finding and affirm on this point as well.

### D. Cross-Appeal

In his cross-appeal, Evans asserts that the Commission's finding that he did not meet his burden of proof that he sustained a compensable injury to his hip and pelvis on August 18, 2021, is not supported by substantial evidence. We disagree.

As explained above, we will not reverse the Commission's decision unless the court is convinced that fair-minded persons with the same facts before them could not have reached the same conclusion arrived at by the Commission. *Sosa v. Kawneer Co., Inc.*, 2022 Ark. App. 195, 645 S.W.3d 26. Here, the ALJ and the Commission found that the

16

references to Evans's hip or pelvis in the medical evidence were related to his compensable hamstring injury. We hold that fair-minded persons could have reached the same conclusion. The medical records cited by Evans in his cross-appeal are records evidencing his hamstring and lower-left-extremity injury, which ARDOT accepted and paid. Evans's argument is simply a request for this court to reweigh the evidence, and we are powerless to do so. *Hines v. Cent. Ark. Transit Auth.*, 2019 Ark. App. 553, 590 S.W.3d 750.

We, therefore, find that substantial evidence supports the ALJ's and the Commission's decision that Evans failed to prove by a preponderance of the evidence he suffered a compensable injury to his hip and pelvis on August 18, 2021. Accordingly, we affirm on cross-appeal.

V. *Conclusion*

For the above-stated reasons, we affirm the decision of the Commission in its entirety.

Affirmed on direct appeal; affirmed on cross-appeal.

ABRAMSON and THYER, JJ., agree.

*Charles H. McLemore, Jr.*, for separate appellant Public Employee Claims Division.

*Walker Law Group, PLC*, by: *Eddie H. Walker, Jr.*, for appellee.